**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **SARAH UPDIKE and JAMES UPDIKE, individually and as parents and next friends of their minor children I.U., A.U., and K.U.,** | : | Case No. _____ |
| 7595 Montridge Drive | : | |
| Cincinnati, Ohio 45244 | : | Judge_____ |
| | : | |
| and | : | |
| | : | |
| **I.U., A.U., and K.U., minors, by and through next friends SARAH UPDIKE and JAMES UPDIKE,** | : | |
| | : | |
| 7595 Montridge Drive | : | |
| Cincinnati, Ohio 45244 | : | **VERIFIED COMPLAINT FOR TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT** |
| | : | |
| and | : | |
| | : | |
| **JENNIFER CIOLINO and ANTONIO CIOLINO, individually and as parents and next friends of their minor child R.C.,** | : | |
| 5047 Village Drive | : | |
| Cincinnati, Ohio 45244 | : | |
| | : | |
| and | : | |
| | : | |
| **R.C., a minor, by and through next friends JENNIFER CIOLINO and ANTONIO CIOLINO,** | : | |
| 5047 Village Drive | : | |
| Cincinnati, Ohio 45244 | : | |
| | : | |
| and | : | |
| | : | |
| **NATALIE WHEELER HASTINGS and JEFFREY HASTINGS, individually and as parents and next friends of their minor child C.J.** | : | |
| 7226 Cobblestone Court | : | |
| Cincinnati, Ohio 45244 | : | |
| | : | |
| and | : | |
| | : | |
| | : | |

1

**C.J., a minor, by and through next friends**   :
**NATALIE WHEELER HASTINGS and**   :
**JEFFREY HASTINGS**
7226 Cobblestone Court   :
Cincinnati, Ohio 45244   :
   :
and   :
   :
**JANIELLE A. DAVIS, individually and as**   :
**parent and next friend to her minor child**   :
**J.D.,**
6931 Goldengate Drive   :
Unit 802   :
Cincinnati, Ohio 45244   :
   :
and   :
   :
**J.D., a minor, by and through next friend**   :
**JANIELLE A. DAVIS**   :
6931 Goldengate Drive
Unit 802   :
Cincinnati, Ohio 45244   :
   :
   Plaintiffs,   :
   :
v.   :
   :
**SARA JONAS, in her official capacity as a**   :
**Member of the Board of Education of the**   :
**Forest Hills School District**,   :
7946 Beechmont Avenue   :
Cincinnati, Ohio 45255   :
   :
and   :
   :
**LINDA HAUSFELD, in her official**   :
**capacity as a Member of the Board of**   :
**Education of the Forest Hills School**   :
**District**,
7946 Beechmont Avenue   :
Cincinnati, Ohio 45255   :
   :
and   :
   :
   :
   :

2

**BOB BIBB, in his official capacity as a Member of the Board of Education of the Forest Hills School District,**
7946 Beechmont Avenue
Cincinnati, Ohio 45255

and

**KATIE STEWART, in her official capacity as a Member of the Board of Education of the Forest Hills School District,**
7946 Beechmont Avenue
Cincinnati, Ohio 45255

and

**LESLIE RASMUSSEN, in her official capacity as a Member of the Board of Education of the Forest Hills School District,**
7946 Beechmont Avenue
Cincinnati, Ohio 45255

and

**LARRY HOOK, in his official capacity as the Superintendent of the Forest Hills School District,**
7946 Beechmont Avenue
Cincinnati, Ohio 45255

and

**BOARD OF EDUCATION OF THE FOREST HILLS SCHOOL DISTRICT**
7946 Beechmont Avenue
Cincinnati, Ohio 45255

and

**THE FOREST HILLS SCHOOL DISTRICT**
7946 Beechmont Avenue
Cincinnati, Ohio 45255

  Defendants.

3

## INTRODUCTION

1.  This is an action brought by students, parents, residents and educators in the Forest Hills School District ("FHSD") challenging the race-based, unprecedented and unconstitutional censorship of discussions about "anti-racism," race, gender, identity and other subject matters in schools and in training through passage by three Defendant Members of the Board of Education of the Forest Hills School District (the "Board") of the "Resolution to Create a Culture of Kindness and Equal Opportunity for All Students and Staff" ("Resolution") on June 22, 2022.

2.  A review of the Resolution reveals, on its face, that it most certainly is not about a "culture of kindness," but rather promotes hatred, racism and discrimination on the basis of race, identity, and gender, and silences voices in opposition to racism and discrimination, further endangering and diminishing already disenfranchised and vulnerable voices within the school district. While the Resolution harms all residents, teachers and students in FHSD, it inflicts disproportionate injury upon students of color and those who are LGBTQ+.

3.  The Resolution is a content-based restriction which prohibits curriculum, education and training on, among other things, "anti-racism," "identity," "Critical Race Theory," and "intersectionality," not only severely restricting but outright prohibiting discussions on such subjects in the School Districts' schools without any legitimate pedagogical purpose, but instead to further certain Board Members' partisan political agendas, using language that is simultaneously extraordinarily broad and vague.

4.  Educators are left wondering what is and what is not prohibited by the Resolution, and the Resolution's suppression of speech robs students of information, ideas, and instructional

approaches that result in the type of robust dialogue the courts have long recognized as essential to a productive citizenry and preservation of this country's democracy. The Supreme Court has emphasized that: "The classroom is peculiarly the 'marketplace of ideas.' The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues, (rather) than through any kind of authoritative selection.'" *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 512 (1969) (internal citations omitted). Just this week, the United Stated Supreme Court confirmed "[t]he First Amendment's protections extend to 'teachers and students,' neither of whom 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *See Kennedy v. Bremerton School District*, 597 U.S. ____ (Slip Opinion June 27, 2022), at syllabus (internal quotations and citations omitted). The United States Supreme Court further affirmed the importance of diversity of thought and expression and the "long constitutional tradition in which learning how to tolerate diverse expressive activities has always been 'part of learning how to live in a pluralistic society.'" *Id.* (internal citations omitted). By censoring and erasing the perspectives of marginalized communities and restricting a robust exchange of ideas, the Resolution prevents students from accessing information needed to learn to think critically and become productive citizens in a diverse world – information to which they are Constitutionally entitled.

5. The Resolution violates the First Amendment Rights of students established by, among other decisions, the United States Supreme Court in *Board of Educ., Island Trees Union Free School District No. 26 v. Pico,* 457 U.S. 853 (1982) (plurality), to receive information and ideas, a right that applies in the context of school curriculum and design. "[T]he

discretion of the States and local school boards in matters of education must be exercised in a manner that comports with the transcendent imperatives of the First Amendment." *Pico*, 457 U.S. at 864. Government actors "may not, consistent with the spirit of the First Amendment, contract the spectrum of available knowledge." *See id.* at 866-67 (quotations omitted). This right of students to receive information is "an inherent corollary" of the rights of free speech explicitly guaranteed by the Constitution. *Id.*

6. Moreover, the Resolution's prohibitions, most notably its prohibition on "anti-racism" curriculum, education and training is a discriminatory race-based policy on its face. It has been long-established in the United States that racism is abhorred by our Constitution, and has no legitimate place in any public school classroom in the United States. By prohibiting education, curriculum, and training regarding "anti-racism," the Resolution instead promotes racism by its very definition.

7. The Resolution is illegal and unconstitutional on its face. It is an illegal and unconstitutional race-based and content-based restriction which violates the First and Fourteenth Amendment to the United States Constitution. The Resolution's vague, overbroad, race-based and viewpoint discriminatory provisions impermissibly invade upon, among other things, students' First Amendment Right to receive information and free speech, educators' First Amendment Right of free speech and academic freedom, and the Equal Protection Clause. The United States Constitution firmly rejects the Resolution's improper racial and partisan motives and methods for effectuating censorship. The Resolution silences speech through its vague, overbroad and viewpoint discriminatory terms, while at the same time intentionally targeting and denying access to ideas aimed at

advancing the educational and civic equality of historically marginalized students because of Defendants' own disagreement with certain viewpoints.

8. In addition to its Constitutional repugnance, the Resolution violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq. ("Title VI") (which prohibits discrimination on the basis of race through intentional discrimination or program services that have a discriminatory effect), and Ohio law, including but not limited to R.C. §3313.60 and related regulations.

9. Plaintiffs respectfully request this Court to declare the Resolution unconstitutional under the First and Fourteenth Amendments, and issue injunctive relief striking it down and barring Defendants from enforcing it.

## PLAINTIFF PARTIES
## AND THE FACTS THAT RELATE TO EACH OF THEM

10. Plaintiffs Sarah Updike ("Sarah") and James Updike ("James") live within the FHSD and are the parents of three minor children I.U. ("IU"), A.U. ("AU"), and K.U. ("KU"). Sarah speaks for herself about the Resolution and its damaging effects on her, her own children who are students in FHSD, and her students, as follows:

I am a teacher and an intervention specialist in the FHSD at Nagel Middle School. My own children are of Arab/Welsh heritage on my side and Irish/Dutch heritage on their father's side. The multifaceted nature of my children's identities is significant to who they are as people and their need to be seen, understood, and celebrated. The theory of intersectionality applies directly to the different ways in which my children may experience discrimination. Teachers and staff being trained to recognize this may, in fact, help or lessen my children's exposure to discrimination and its effects. To prohibit staff training on the topic of

7

intersectionality for FHSD staff has the effect of denying such possible benefits to my children should it be considered and adopted by FHSD. To date, it has not been. My youngest son is disabled by an unknown neurological condition which began when he was 3. As educators we need to understand that experiences are unique to individual students, and biases and ignorance exist and can be harmful. For instance, it is common for schools to experience disproportionate discipline issues that have to be examined through the lens of identity. Students with special needs and students of color are often disproportionately disciplined more frequently than their non-disabled and white peers respectively. Girls and students of color are often overlooked for honors classes. Discipline should not be "equal". It should be *equitable*.

When my child is experiencing disproportionate stress due to one or more facet of their identity, that needs to be taken into consideration. If my son is having a meltdown because he can still remember what it was like to be able to speak a year ago, but now has to struggle to tell others around him what he wants or needs, I would hope his identity would be taken into account. When my child with anxiety and depression was sick of being called names in gym class while their brother was spending yet another stay in the intensive care unit at Children's and they ran out of the gym, I was grateful for the equitable treatment rather than "equal" treatment.

As a teacher I received a heart-breaking email from a student soon after the announcement of the resolution. It is significant to note that this student is black. To ignore their race is to overlook a problem our community is facing. This Resolution makes students of certain colors, races and identities and their families to not feel welcome. If this is not seen as a problem by our Board, that concerns me even more. To say that you do not support anti-

racism implies the FHSD doesn't have the backs of our students of certain color, race or identity, and that we refuse to acknowledge their experiences, and refuse to remedy discrimination they may suffer in our schools as a result.

In not taking race, socioeconomic class, religion, gender identity, sex, ethnicity or culture into consideration in administering academic programs, we also overlook the opportunity to expose our students, and my own kids, to more diverse readings, perspectives, and figures in history. "White", "straight", "able bodied", "cis gender" identities have become the default to the point that some people don't notice it anymore, unless they don't fit into those categories. My kids do not fit those categories.

- **IU**

IU (16 years old, she/her): IU is a student at Turpin. IU is a member of the LGBTQ+ community who does not always feel safe to be herself at school and in public. Given her darker complexion as compared to many of her typical peers (and even her other siblings), she has faced comments from peers and has been misidentified as being Hispanic unless she has the opportunity to clarify. She is very uncomfortable around confrontation and is very uneasy complaining about it. She has a quick sense of humor and not a lot of self-confidence. She is amazing with her younger brother and has adapted so well to giving him the extra care he now needs.

As a high school student, IU wonders how health and history classes will be taught given the content of the kindness resolution. Racism, ableism, and sexism are not exclusive to the past and continue to exist not just in America, but in our schools. Not talking about them doesn't make them go away. How can we explore current events without talking about examples of injustice and inequity? Are we just not going to acknowledge them? If

the next generation is meant to improve the workings of the country, they must first acknowledge the areas for improvement. Schools are meant to produce well-rounded citizens, and not just calculators and reciters.

During the student walk out, she was disheartened to hear white, male students nearby repeatedly using the "n" word and thinking it funny. IU was able to attend the student-led Diversity Day and wished that those same students had attended so they could learn how hurtful their behavior was since they hadn't learned that lesson from their homes, evidently. If a lot of the "unkindness" we see at school is rooted in sexism, racism, and homophobia, then the problem isn't kindness, it's ignorance grown from a place of privilege.

- **<u>AU</u>**

AU (13 years old, they/them): AU is a student at Nagel in FHSD. AU is also a member of the LGBTQ+ community. AU is currently exploring their own identity with the pronoun "they", but also goes by "she" at the moment at school because they fear the response peers and some teachers may have. AU is heavily involved in theater, performing professionally with Playhouse in the Park, Carnegie in Covington, and singing and dancing. AU is a lot more confident and outspoken than their older sister.

At AU's age, examining their own identity in a safe environment is essential. At this age, children AU's age are looking inward into who they are and need to know that what they see is okay, that it is enough. They look for that affirmation from those around them. That kind of exploration of identity doesn't happen in a vacuum or only at home. It is organically woven into every experience they have, school being a big part of that.

- **KU**

10

KU (5 years old, he/him): KU is 5 years old and will begin full day kindergarten in FHSD this coming school year. KU was a typical child until he began to drool and lose the use of his hands at the age of 3 at the very start of the COVID shutdown. He gradually lost the ability to walk and then very suddenly lost the ability to speak last summer. New and experimental medications have brought back some limited walking, and a few sounds, but he still has barely any use of his hands. Having an NG tube in his nostril (due to aspiration of fluids) and being in a wheelchair for a lot of his time in daycare and school has caused some children to misunderstand and fear him. My husband educated his peers at his preschool and this open conversation about his unequal life experiences brought about understanding, sympathy, and empathy. Such conversations would not be permitted under the kindness resolution and would condemn his peers to ignorance, and my son to loneliness.

To not have to examine or acknowledge one's own privilege is the very definition of privilege. Some people don't have to think "I hope my kid isn't beaten up for their orientation". "I hope my child isn't called a terrorist. AGAIN". "I hope my kid isn't excluded from play because he's disabled". "I hope my kid doesn't have a seizure in front of his peers without them first knowing what a seizure is because then they will fear him even more". Some don't have these worries, that is an area of privilege for those people. I know others have worries I don't. Those are my privileges. No one is stamped with "victim" or "oppressor" on anyone's heads. That's patronizing, hurtful, and is never our goal. We are all complex individuals, with our own baggage and our own strengths we worked hard for and privileges we didn't. The only way we will accept ourselves and each other is to understand and learn about our differences safely, respectfully, and with open

minds. That is what I want for my children and my students. The Resolution has the coercive effect of preventing the open exchange of ideas and open minds, and preventing the examination of issues which are critical to children learning to socialize, live and interact with people who are different from them in our society. These skills are crucial and are necessary to successfully function in our society, and they are a large part of what we teach in our educational system. This Resolution will prevent me from teaching these skills.

In addition, I, as an educator, am unclear on what educators may and may not do under the Resolution, and what we may and may not teach and discuss. Among other things, I take pride in organizing and celebrating Black History Month at Nagel, which necessarily involves an examination of the history, experiences, and writings involving, among other things, slavery, racism and Civil Rights (i.e., anti-racism).

8. Plaintiffs Jennifer Ciolino and Antonio Ciolino reside within FHSD and are parents of their minor child R.C. ("RC"). RC is a 16-year-old black (biracial), transgender boy who is entering the 11th grade at Turpin High School and will attend the Great Oaks satellite vocational school to study Digital Art. Turpin High School is a part of the FHSD. R.C. will take advanced placement classes in Literature and Creative Writing, and Psychology as part of his education. RC is a solid student who struggles with symptoms of anxiety and depression. He is interested in video games, especially Japanese role-playing games and rhythm games. He is highly creative and has been writing creatively for many years, including novels, plays, poetry, and song parodies. He has strong artistic skills and draws, paints, and creates animated digital art. He enjoys musicals and likes to sing and act, and he likes to dress-up as his favorite characters. RC aspires to make a living in the creative

arts with a desire to live simply on a small farm with large gardens and animals. His parents believe that the race-conscious language of the Resolution will cause RC fear and intimidate him in his interactions with his peers and fellow students both in the classroom and out. The ability to teach and train on the prevention of discrimination and racism, including racist words and actions, against students or staff by other students, and by teachers or staff against students or other staff is critical to achieving an open, inviting learning environment that is free of hostility or fear and which welcomes the free exchange of ideas so education and learning can occur. It is beyond words that telling our students, teachers and staff through the Resolution that they can't be taught or trained not to create a racist environment and engage in racial discrimination, or an environment which creates hostility or fear by preventing identity discrimination or hostility will have a negative effect on the learning process and socialization due to the hostile and intimidating environment it will allow.

9. Plaintiffs Natalie Wheeler Hastings and Jeffrey Hastings are parents of their minor child C.J. ("CJ"). CJ attends Turpin High School in the FHSD. They speaks for herself about the Resolution and its damaging effects on them, and their child who is a student in FHSD as follows:

In 2019, we transferred our child CJ into the Forest Hills School District from a private Christian school at his request. We worried that transferring into middle school during the school year would be difficult, but instead, he thrived. He went from being a student accused of showing disrespect at his former school to being a student encouraged to share his unique insights on the world.

13

Today we are filing suit against this resolution because we fear the very things that enabled him to thrive as a student: psychological safety, freedom to say what he felt or believed as part of class discussion, and additional opportunities to further his academic interests are being taken away.

When I asked CJ about his biggest concern with the resolution passed, he told me that it was the potential loss of Advanced Placement classes. While he's not always interested in turning in homework, CJ is very engaged in classes that interest him. This year, he took AP Human Geography. A child who mods geopolitical video games to play in different eras, and who plays more than 5 instruments is not a child who will thrive from the removal of advanced classes or limitations on the discussion in the classroom.

As his parents, if you asked us about our biggest concern, it would be that we worry about his psychological safety. CJ has had the space to explore his identity and his interests at both Nagel Middle School and Turpin High School. The resolution is designed to restrict that very freedom of exploring diversity of any kind.

CJ is also concerned about his fellow students' safety. We have seen in the past few years how the lack of honoring a classmate's pronouns or acknowledgment of other things important to students affects CJ's own learning, even if it's not happening to him directly.

Which teachers are safe to ask questions? Which teachers are safe for being your authentic self? These are not questions my 10th grader should be having to ask.

11. Plaintiff Janielle A. Davis is mother to her minor child J.D. ("JD"). Janielle is bisexual. JD will be a 4th grade student this year at Mercer elementary school. JD is biracial. Janielle expressed her fears and the effects the Resolution has in her and her daughter as follows:

14

JD is a happy child and has tons of friends. But she is aware of the Resolution and discussion over it and feels confused and frightened over what it is about. JD's teachers will be unable to teach JD and her classmates that it is wrong to be racist, not to be racist and not to discriminate on the basis of race because of the Resolution. The Resolution will render administrators, teachers and other staff unable to address and eliminate racism, racial discrimination, and speech that conveys racial hatred and will lead to an atmosphere of fear and intimidation at school. I worry about JD's ability to explore her own identity as she grows and feeling intimidated by the inability to discuss or examine identity issues at school. Issues of racism and racial discrimination must be able to be discussed and dealt with in the educational environment for it to be a welcoming, open environment which allows the free exchange of ideas and information.

I grew up in the neighboring neighborhood next door, Mount Washington and moved a few blocks down into to Anderson Township with my partner to get JD into FHSD about 5 years. Growing up in Mount Washington, our family was a minority and one of few African Americans living there at the time. There was a major lack of understanding of African American culture and it was very apparent due to the various micro-aggressions my family and I have endured throughout the years. I have been told everything from " I sound very intelligent for a black person" to being told I am "one of the good ones". As a young impressionable child, I didn't know that these comments were harmful but looking back, I'd be mortified if I heard anyone make comments like these to my daughter. I also struggled with my own identity, such as something as simple as not knowing how to take care of my hair, taking advice from peers because they thought it was unsanitary to not wash your hair everyday (which is very drying and damaging to African American hair).

Although I believe most of the instances such as these are not intentionally malicious from our white friends and neighbors, they all have one thing in common and that is the lack of understanding of other people's culture. I have not always been as comfortable as I am now in my skin and my identity as I am now due to my upbringing and feeling different in my community and I do not want my daughter to suffer with these same feelings of invisibility and confusion due to the fear of not being able to talk about our ethnicity, our history, and identity. With the school board banning the teaching of race, sexual orientation, and other diverse backgrounds, I'm afraid that the necessary education of other cultural backgrounds will perpetuate these micro aggressions and it will not be allowed to teach our children why they are harmful to people like me.

## DEFENDANT PARTIES

12. Defendant Board of Education of the Forest Hills School District (the "Board") is a body politic under Ohio law capable of being sued.  It is comprised of five members: Defendants Sara Jonas ("Jonas"); Linda Hausfeld ("Hausfeld"); Bob Bibb ("Bibb"); Katie Stewart ("Stewart"); and Dr. Leslie Rasmussen ("Rasmussen").  This action is brought against the Board, and the Board members in their official capacities as members of the Board.  The Board and the Members of the Board hold policy-making authority for the Forest Hills School District.

13. Defendant Forest Hills School District ("FHSD") is a public school district located in Anderson Township, Hamilton County, Ohio, and includes two high school, one middle school, and six elementary schools.  FHSD and its component schools are recipients of Federal financial assistance.

16

14. The Board has indicated it will hire Larry Hook as the new Superintendent of FHSD today. The Superintendent holds policy-making authority for FHSD with respect to implementation of laws, policies, regulations and procedures governing the FHSD schools, including enforcement of policies promulgated by the Board or otherwise within the District.  This action is brough against the Superintendent in his official capacity.

15. For purposes of 42 U.S.C. §1983, all actions of Defendants set forth herein are state actions and the Defendants are state actors operating under color of state law and are "persons" for purposes of 42 U.S.C. § 1983.  The Resolution was enacted by the Board as official policy, custom and practice for FHSD.  As set forth herein, Defendants have intentionally violated clearly established rights of which a reasonable person should have been aware.

## JURISDICTION AND VENUE

16. This Court has Federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 as Plaintiffs assert claims under 42 U.S.C. §1983.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 as said claims are so related to the Federal law claims that they form one case or controversy for purposes of Article III of the United States Constitution.

17. Plaintiffs also seek a declaration regarding the Constitutionality of the Resolution and with respect to their rights under 28 U.S.C. §§2201, 2202.

18. This Court has personal jurisdiction over Defendants as they are located in Hamilton County, Ohio, which is within the area encompassed by the United States District Court for the Southern District of Ohio, and Defendant's wrongful and illegal actions occurred in Hamilton County, Ohio.

19. Venue lies in this forum pursuant to 28 USC §1391(a) and Southern District Local Civil Rule 82.1 because the claims arose in Hamilton County, Ohio where at all times material to this action the parties resided and committed the acts giving rise to this action.

## ADDITIONAL FACTUAL ALLEGATIONS

20. Defendant Board members Jonas, Hausfeld, Bibb, and Stewart are newly-elected members of the Board. They took office following the November 2, 2021 election.

21. Defendant Board members Jonas, Hausfeld, Bibb, and Stewart campaigned for office on the platforms of being "AGAINST Critical Race Theory," and "AGAINST Comprehensive Sexuality Education," among other things. These Board members claimed in campaign materials that, among other things, principles of Critical Race Theory were being concealed in language regarding race, gender, inclusion, belonging, diversity and equity, to "subvert your critical thinking."

22. On or about March 30, 2022, the Board cancelled the annual "Diversity Day" at Turpin High School, one of the two high schools within FHSD – an opt-in voluntary in-school event whereby students could learn about cultural and racial issues and engage in discussions around diversity --- scheduled for the next day, purportedly to permit parents to obtain additional information.

23. Following the distribution of additional information to parents and minor modifications to the agenda, "Diversity Day" was re-scheduled for May 18, 2022. However, on or about May 1, 2022, a majority of the Defendant Board members decided to again cancel "Diversity Day" and further prohibited the event from taking place during school hours, using school resources, or tax-payer funded resources. Students, parents, and residents of

FHSD protested the Board's decision.  Hundreds of students held a walk-out to protest the Board's decision on May 18, 2022.

24. On June 22, 2022, at a regularly scheduled meeting of the Board, the Resolution was raised for discussion and vote by the Board Member Defendants.  The Resolution had been added to the agenda for the Board meeting, thus giving notice to the community of its contents, just one day prior to the meeting.  Despite the nearly non-existent notice, numerous students, parents and educators attended the June 22, 2022 Board meeting to express their opposition and fear if the Resolution were passed, and to plead with the Board to reject the Resolution.  Defendant Board Members Jonas, Bibb, and Hausfeld nonetheless ignored their pleas, voted in favor of and therefore passed the Resolution.  This conduct and the Resolution constitute official action and policy under color of state law.  A copy of the Resolution is attached hereto as Exhibit A.

25. During the June 22, 2022 Board meeting, in discussions prior to passage of the Resolution, Defendant Jonas in her comments tacitly acknowledged the breadth and vagueness of the Resolution. She noted, however, that she and Defendants Bibb, Hausfeld and Stewart had run for office on an "anti-CRT" platform, and the Resolution was, in effect, being passed to effectuate their partisan political agenda against "activism."

26. At the same Board meeting on June 22, 2022, Defendant Board member Rasmussen made a motion to reinstate "Diversity Day" at Turpin High School and create a similar event at Anderson High School, also within FHSD.  The same Defendant Board Members who voted in favor of the Resolution – Defendants Jonas, Bibb, and Hausfeld – also voted *against* the motion to implement and reinstate "Diversity Day" at the high schools.

19

27. The Resolution is vague, overbroad, race-based and unconstitutional on its face, and its invidiously discriminatory purpose is likewise evidenced on its face and in the conduct of Defendant Board Members.

28. Among other things, the Resolution's most egregiously unconstitutional provisions include:

    a. "FHSD *will not utilize Critical Race Theory, intersectionality, identity, or anti-racism curriculum, for student, education or any staff training*."

    b. "WHEREAS**,** *Critical Race Theory (CRT), anti-racism, and all related euphemistic surrogates should similarly not be advocated in any form*, in FHSD's curricula or staff training."'

    c. "Schools may not use race, socioeconomic class, religion, gender identity, sex, ethnicity, or culture as a consideration when hiring *or administering academic programs or evaluation systems.*"

    a. "Neither schools, nor instructors or guest speakers, *shall have student participate in class or complete assignments that require, guide, or nudge* the student to consider his or her race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture as a deficiency or a label to stereotype the student as having certain biases, prejudices or other unsavory moral characteristics or beliefs based on these immutable characteristics."

29. The Resolution's prohibitions raise numerous questions in the minds of teachers and students about the permissible scope of instruction and discussion within FHSD, which alone has a chilling effect upon speech and academic freedom. Examples of the issues and questions raised by the Resolution include:

20

a.  What is "identity" curriculum and training?

b.  What is "intersectionality" curriculum and training?

c.  What are "euphemistic surrogates" and what are the "euphemistic surrogates" of "anti-racism," and CRT which are banned by the Resolution?

d.  Is instruction on slavery, reconstruction, Federal and state laws which were found to be race-conscious and unconstitutional, historical racism and the response to it (i.e., anti-racism), and the Civil Rights movement permitted?

e.  Is instruction and teaching on any remaining effects and impacts of slavery, Jim Crow laws, and any institutional racism that has existed in the United States prohibited by the Resolution? (They certainly would appear to be from its language).

f.  Are potential measures to remedy any remaining effects of racism and racial discrimination such as affirmative action in education and public contracting, reparations, or other measures, and whether such measures would be warranted and just, prohibited topics that cannot be examined as topics of curriculum?

g.  How, for example, may History and English Language Arts teachers teach and discuss topics involving our historical slavery and racism and our country's moral response in opposition to it?

h.  If a student or employee is being harassed or discriminated against on the basis of his or her race or gender identity, assuming he or she would even feel comfortable reporting it following the passage of the Resolution, may the school and educators address and remedy it?  An appropriate response would, by definition, involve "anti-racism" and/or "identity" training or evaluation.

21

    i.   What constitutes "nudging" so as to fall within the prohibition on "nudging" students to consider his or her race, class, religion, gender identity, etc.?

    j.   How will FHSD meet its legal obligations under Titles VI and VII of the Civil Rights Act of 1964 if it may not train against racism and discrimination?

    k.   Are celebrations of Black History month, which necessarily involve the examination of Black authors and the experiences about which they write, permitted?

    l.   How may schools and educators implement individualized learning and instructional plans for students in need of such services if they are not permitted to consider the student's individual needs which may involve their race, culture, sex, or ethnicity in "administering academic programs" or "evaluations" to the child?

    m.  What is a "controversial issue," who determines what constitutes a "controversial issue," and when and how may "controversial issues" be discussed in the classroom?

30. Upon information and belief, the Resolution also places FHSD in jeopardy with respect to its ability to offer Advanced Placement ("AP") Classes within its high schools. Advanced Placement is a program created by the College Board which offers college-level curricula and examinations to high school students. FHSD's offering of a broad array of AP Classes, with its highly-skilled educators, is one of FHSD's characteristics of excellence. AP Classes, particularly those such as AP U.S. History, AP U.S. Government and Politics, AP Human Geography, and AP English Literature and Composition, necessarily require and teach critical thinking on topics including slavery, the role of racism in our history and steps taken to address racism, the Civil War, Reconstruction, the Civil Rights movement

and opposition to racism, red-lining, and Black history and authors, among other things. The Resolution's prohibitions on curricula and teaching means that teachers may not fully teach and explore these topics with students, and students will not receive the full array of information and ideas to which they are entitled on these topics. The College Board recently set forth a new Statement of Principles and has indicated that any high schools that ban "required topics" in their AP classes could lose AP designation. *See, e.g.,* "*What AP Stands For*," https://apcentral.collegeboard.org/about-ap/what-ap-stands-for; "*High schools could lose AP classes if they ban 'required topics' from being taught*," https://www.today.com/parents/high-schools-lose-ap-classes-banning-required-topics-rcna18813.

31. "Racism" is, by definition: "a belief that race is the primary determinant of human traits and capacities and that racial differences produce an inherent superiority of a particular race"; "a: doctrine or political program based on the assumption of racism and designed to execute its principles"; "b: a political or social system founded on racism, racial prejudice or discrimination."

32. "Anti-racism" is, by definition, "the policy or practice of opposing racism and promoting racial tolerance."

33. Defendants' prohibition of anti-racism, i.e., their anti-anti-racism, is a tacit promotion of racism. At a minimum, it indicates that Defendants, by their policy as set forth in the Resolution, will tolerate racism and will not tolerate anti-racism.

34. The Resolution is subject to strict scrutiny, as set forth below, which it cannot pass. Defendants' conduct violated clearly establishes constitutional rights of which a reasonable person would know.

35. In addition to its Constitutional repugnance, the Resolution violates the mandates of Ohio

law, including but not limited to R.C. §3313.60 which provides in relevant part:

> (A) The board of education of each city, exempted village, and local school district and the board of each cooperative education school district established, pursuant to section 3311.521 of the Revised Code, shall prescribe a curriculum for all schools under its control. Except as provided in division (E) of this section, in any such curriculum there shall be included the study of the following subjects:
> * * *
> (2) Geography, the history of the United States and of Ohio, and national, state, and local government in the United States, ***including a balanced presentation of the relevant contributions to society of men and women of African, Mexican, Puerto Rican, and American Indian descent as well as other ethnic and racial groups in Ohio and the United States***;
> (3) Mathematics;
> (4) Natural science, including instruction in the conservation of natural resources;
> (5) Health education, which shall include instruction in: . . . (i) Beginning with the first day of the next school year that begins at least two years after March 24, 2021, in grades six through twelve, at least one hour or one standard class period per school year of ***evidence-based social inclusion instruction***, except that upon written request of the student's parent or guardian, a student shall be excused from taking instruction in social inclusion.

36. The Resolution is unconstitutional on its face and in its purpose. It is already having a

destructive impact upon residents, parents, students and teachers, including Plaintiffs.

Among other things, the Resolution is already impacting curriculum and curriculum

planning for the 2022-2023 school year. Plaintiffs have suffered concrete and

particularized Constitutional injuries caused by Defendants' actions as set forth herein,

and/or will imminently suffer such injuries. Injunctive and declaratory relief is necessary

and will redress Plaintiffs' injuries. Moreover, there is a credible threat the Resolution will

be enforced against teachers, including Plaintiff Sarah Updike, who is at imminent risk of

loss of her employment. There is likewise a credible threat that students' Constitutional

right to receive information and engage in a robust exchange of ideas will be severely curtailed.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF FOURTEENTH AMENDMENT – VAGUENESS; 42 U.S.C. §1983

37. Plaintiffs incorporate the foregoing allegations as if fully restated here.

38. The Fourteenth Amendment to the U.S. Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law."

39. Defendants acted under color of state law, and while acting under color of state law, subjected Plaintiffs that deprive them of rights and privileges under the U.S. Constitution, including but not limited to the 1st Amendment and the 14th Amendment.

40. A law or restriction is void for vagueness if its prohibitions are not clearly defined. Where First Amendment rights are at stake, a strict application of this principle is required. A law is impermissibly vague if it either fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or authorizes or even encourages arbitrary and discriminatory enforcement.

41. The Resolution is unconstitutionally vague on its face, and is already having a destructive impact upon parents, students and teachers, including Plaintiffs.

42. Among other things, the Resolution fails to provide fair notice of what educators can and cannot include in their courses, and because it invites arbitrary and discriminatory enforcement.

43. Educators, including Plaintiff Updike, are confused and concerned about what they can teach and the risk of loss of employment.

44. As a result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including violations of their Fourteenth Amendment rights to due process.

## COUNT II
## VIOLATION OF FIRST AMENDMENT – RIGHT TO RECEIVE INFORMATION; 42 U.S.C. §1983

45. Plaintiffs incorporate the foregoing allegations as if fully restated here.

46. The First Amendment protects, among other things, the right to receive information and prohibits actions which limit the spectrum of knowledge available to students.

47. The Resolution violates the First Amendment, as applied by the Fourteenth Amendment, on its face because it prohibits educators from teaching about specific topics, including for example "anti-racism," and it imposes restrictions upon the ideas to which students may be exposed in the FHSD public school system.

48. The prohibitions imposed by the Resolution are not based upon any legitimate pedagogical concerns, but rather based upon Defendants' narrow political and partisan agendas. To the extent the Resolution could be interpreted as having any legitimate pedagogical concerns, it is overbroad because a substantial number of its applications are unconstitutional.

49. The Resolution is overbroad and violates the First Amendment right of the Plaintiffs, particularly the students, to receive information and ideas, on its face and in its purpose, and it is already having a destructive impact upon parents, students and teachers, including Plaintiffs.

50. As a result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including violations of their First Amendment rights to receive information and ideas.

## COUNT III
## VIOLATION OF FIRST AMENDMENT – OVERBROAD AND VIEWPOINT-BASED RESTRICTION ON ACADEMIC FREEDOM; 42 U.S.C. §1983

51. Plaintiffs incorporate the foregoing allegations as if fully restated here.

52. The First Amendment protects, among other things, academic freedom.

53. The Resolution is overbroad and imposes content and viewpoint-based restrictions, as well as impinges upon academic freedom, both on its face and in its purpose, in violation of Plaintiffs' First Amendment rights, and it is already having a destructive impact upon parents, students and teachers, including Plaintiffs.

54. The purpose and effect of the Resolution is to ban speech on topics involving race, gender, and identity, among other things, because of certain Defendant Board Members' personal objections to the messages that discussion of such topics may involve.

55. The Resolution is subject to strict scrutiny and is not narrowly tailored to achieve any compelling interest that may be served by this type of content-based and viewpoint censorship.

56. As a result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including violations of their First Amendment rights to speech because the Act is overbroad, viewpoint discriminatory, and infringes on academic freedom.

## COUNT IV
## VIOLATION OF FOURTEENTH AMENDMENT – RACE-BASED AND DISCRIMINATORY PURPOSE; 42 U.S.C. §1983

57. Plaintiffs incorporate the foregoing allegations as if fully restated here.

58. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

59. An official action taken for the purpose of discriminating on account of race has no legitimacy under the United States Constitution.

60. The Resolution is a race-based and race-conscious restriction on its face. It likewise was enacted with a racially discriminatory purpose. The Resolution is already having a destructive impact parents, students and teachers, including Plaintiffs.

61. The Resolution was enacted, at least in part, with the purpose to discriminate against students of color by chilling and suppressing speech aimed at enhancing the educational, social, and civic experiences of students of color and their families. The Resolution explicitly singles out for prohibition concepts related to race, gender identity, and sex. The Act will foreseeably disparately harm students of color and those who identify as LGBTQ+.

62. The Resolution violates Plaintiffs' Fourteenth Amendment right to Equal Protection on its face and in its purpose.

63. The Resolution is subject to strict scrutiny and is not narrowly tailored to achieve any compelling interest.

64. As a result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including violations of their Fourteenth Amendment rights to equal protection.

**COUNT V**
**RELIEF UNDER TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.**
**2000(d) et seq. ("TITLE VI")**

65. Plaintiffs incorporate the foregoing allegations as if fully restated here.

66. Private individuals may sue to enforce Section 601 of Title VI, which provides "[n]o person

in the United States shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance" and may seek injunctive relief."

*Alexander v. Sandoval*, 532 U.S. 275, 279–80 (2001).

67. Section 601 of Title VI prohibits intentional discrimination and racial classifications which

violate the Equal Protection Clause.

68. FHSD receives Federal financial assistance every year distributed through the Ohio

Department of Education, making FHSD subject to the prohibition of 42 U.S.C. § 2000(d).

69. The Resolution of the FHSD Board of Education is race-conscious on its face, constitutes

invidious racial discrimination, violates Title VI, and must be enjoined by this Court.


**COUNT VI**
**DECLARATORY RELIEF**

70. Plaintiffs incorporate the foregoing allegations as if fully restated here.

71. The Resolution, and the effect it has upon Plaintiff Parents, their children who are students

in FHSD, and Teachers of FHSD present a case of actual controversy under 28 U.S.C §

2201 and Plaintiffs, who are interested parties, seek a declaration from this Court as to the

constitutionality and enforceability of the Resolution under the claims made herein and

such further relief as is necessary and proper against all Defendants pursuant to 28 U.S.C

§ 2202.

**WHEREFORE**, Plaintiffs demand relief against Defendants as follows:

A.      A declaration that the Resolution and Defendants' actions are unconstitutional in violation of the First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 2000(d), and that the Resolution likewise violates Ohio state law as set forth in R.C. §3313.60, and that the Resolution is void and unenforceable;

B.      A temporary, preliminary and permanent injunction which strikes down the Resolution and enjoins Defendants, their employees, agents, and successors in office, from enforcing it or taking further action to enact similar race-based or content-based policies;

C.      Costs;

D.      Attorneys' Fees; and

E.      Any other relief to which Plaintiffs may be entitled.

Dated:   June 29, 2022                                    Respectfully submitted,


                                                     *s/W. Kelly Lundrigan*
                                                     *s/ Nicole M. Lundrigan*
                                                     W. Kelly Lundrigan (0059211)
                                                     Nicole M. Lundrigan (0075146)
                                                     LUNDRIGAN LAW GROUP CO, LPA
                                                     1080 Nimitzview Drive, Suite 402
                                                     Cincinnati, Ohio 45230
                                                     Phone (513) 813-7610
                                                     klundrigan@lundrigan-law.com
                                                     nlundrigan@lundrigan-law.com
                                                     *Attorneys for Plaintiffs*

**VERIFICATION**

State of _Ohio_ )
                              ) ss:
County of _Hamilton_ )

The undersigned, _Antonio Ciolino_ , being over the age of 18 and competent to testify, and being first duly sworn and cautioned, states that general factual allegations and those that relate to myself and my minor child(ren) contained in the foregoing Verified Complaint for Temporary, Preliminary and Permanent Injunctive and Declaratory Relief are true and accurate to the best of my knowledge and belief.

The foregoing instrument was sworn to and acknowledged before me on the 29th day of June, 2022.

Notary Public

NICOLE MARIE LUNDRIGAN
ATTORNEY AT LAW
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

**VERIFICATION**

State of Ohio )
) ss:
County of Hamilton )

The undersigned, Natalie Wheeler Hastings being over the age of 18 and competent to testify, and being first duly sworn and cautioned, states that general factual allegations and those that relate to myself and my minor child(ren) contained in the foregoing Verified Complaint for Temporary, Preliminary and Permanent Injunctive and Declaratory Relief are true and accurate to the best of my knowledge and belief.

Natalie W. Hastings

The foregoing instrument was sworn to and acknowledged before me on the 29th day of June, 2022.



Notary Public

NICOLE MARIE LUNDRIGAN
ATTORNEY AT LAW
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

## **VERIFICATION**

State of _Ohio_ )
                                        ) ss:
County of _Hamilton_ )

The undersigned, _Jeffrey Hastings_ , being over the age of 18 and competent to testify, and being first duly sworn and cautioned, states that general factual allegations and those that relate to myself and my minor child(ren) contained in the foregoing Verified Complaint for Temporary, Preliminary and Permanent Injunctive and Declaratory Relief  are true and accurate to the best of my knowledge and belief.

The foregoing instrument was sworn to and acknowledged before me on the 29th day of June, 2022.

_____
Notary Public



NICOLE MARIE LUNDRIGAN
ATTORNEY AT LAW
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

**VERIFICATION**

State of ___Ohio___ )
                                    ) ss:
County of ___Hamilton___ )

The undersigned, ___Janielle Davis___ , being over the age of 18 and competent to testify, and being first duly sworn and cautioned, states that general factual allegations and those that relate to myself and my minor child(ren) contained in the foregoing Verified Complaint for Temporary, Preliminary and Permanent Injunctive and Declaratory Relief are true and accurate to the best of my knowledge and belief.

_Janielle Davis_ (signature)

        The foregoing instrument was sworn to and acknowledged before me on the 29th day of June, 2022.

_signature_
Notary Public



NICOLE MARIE LUNDRIGAN
ATTORNEY AT LAW
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

**VERIFICATION**

State of _Ohio_ )
)  ss:
County of _Hamilton_ )

The undersigned, _Jennifer Ciolino_ , being over the age of 18 and competent to testify, and being first duly sworn and cautioned, states that general factual allegations and those that relate to myself and my minor child(ren) contained in the foregoing Verified Complaint for Temporary, Preliminary and Permanent Injunctive and Declaratory Relief  are true and accurate to the best of my knowledge and belief.

_[signature]_

    The foregoing instrument was sworn to and acknowledged before me on the _29th_ day of June, 2022.

_[signature]_
Notary Public

W. KELLY LUNDRIGAN, Attorney at Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration
State. Section 147.03 O.R.C.

## **VERIFICATION**

State of _Ohio_ )

County of _Hamilton_ ) ss:

The undersigned, _Sarah Updike_, being over the age of 18 and competent to testify, and being first duly sworn and cautioned, states that general factual allegations and those that relate to myself and my minor child(ren) contained in the foregoing Verified Complaint for Temporary, Preliminary and Permanent Injunctive and Declaratory Relief are true and accurate to the best of my knowledge and belief.

_S. Updike_

    The foregoing instrument was sworn to and acknowledged before me on the 29th day of June, 2022.

_Nicole Lundrigan_

Notary Public

NICOLE MARIE LUNDRIGAN
ATTORNEY AT LAW
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

## **VERIFICATION**

State of _Ohio_ )
                      ) ss:
County of _Hamilton_ )

The undersigned, _James Updike_ , being over the age of 18 and competent to testify, and being first duly sworn and cautioned, states that general factual allegations and those that relate to myself and my minor child(ren) contained in the foregoing Verified Complaint for Temporary, Preliminary and Permanent Injunctive and Declaratory Relief are true and accurate to the best of my knowledge and belief.

_James Updike_

The foregoing instrument was sworn to and acknowledged before me on the 29th day of June, 2022.

_Notary Public_

NICOLE MARIE LUNDRIGAN
ATTORNEY AT LAW
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.



RESOLUTION TO CREATE A CULTURE OF KINDNESS AND EQUAL OPPORTUNITY FOR ALL STUDENTS AND STAFF

**WHEREAS**, the Board of Education (BOE) of Forest Hills Local School District (FHSD), resolves to declare its official opposition to the use of race-based and/or identity-based training, curricula, and methodology in public education; and

**WHEREAS**, EdWeek.com identifies the core idea of Critical Race Theory as racism being "a social construct" "that it is not merely the product of individual bias or prejudice, but also something embedded in legal systems and policies"; and

**WHEREAS**, the SWiFT Education Center observes that "Intersectionality, a concept defined by Kimberle Crenshaw (1989), describes the social, economic, and political ways in which identity-based systems of oppression connect, overlap, and influence on another"; and

**WHEREAS**, Ohio Administrative Code 3301-32-10-24 provides that the policies and procedures for school programs governed by the Ohio Department of Education shall include a provision that such programs shall be nondiscriminatory "in providing services to children and their families on the basis of race, religion, cultural heritage, political beliefs, disability, or marital status"; and

**WHEREAS,** FHSD policy code po1422, Nondiscrimination and Equal Employment Opportunity, includes the following provision: "The Board of Education does not discriminate on the basis of race, color, national origin, sex, disability, age, religion, military status, ancestry, genetic information, or any other legally protected category, in its programs and activities, including employment opportunities"; and

**WHEREAS**, FHSD policy code po2240, Controversial Issues, includes the following provisions: "A controversial issue may be the following: (1) any problem that society is in the process of debating, (2) any problem for which more than one solution is being supported, or (3) any issue that may arouse strong emotions. These issues may be a part of the instructional program only when they are germane to the subject being taught and only after consideration has been given to the age and maturity of the students. No individual may impose personal views on the students, and a balance must be maintained through the presentation of all sides of an issue"; and

**WHEREAS**, Public education, properly designed, includes age-appropriate exposure to history, philosophies, and structures which comprise that American experience. Pertinent instruction regarding history of racism and inequality in America should not purport to deliberately undermine race groups, student/family values, religious beliefs, or founding principles; and

**WHEREAS**, Public educators are not authorized to endorse or proselytize on behalf of a specific perspective on any areas of faith, civil rights, economics, international affairs, sociology or politics; and

**WHEREAS,** Critical Race Theory (CRT), anti-racism, and all related euphemistic surrogates should similarly not be advocated in any form, in FHSD's curricula or staff training; and

**WHEREAS**, FHSD schools and teachers are expected to provide a comprehensive education on America's history that neither sanitized its past, nor denies the possibility of moral progress; and

**WHEREAS**, FHSD partners with parents to assist in their responsibility to education their children in accordance with the principle that America is a nation founded on the premise that all men and women are created equal complemented by the Civil Rights Acts as well as federal and state laws and Constitutional provisions that address the enforcement of Civil Rights, equal protection and equal opportunity.

**NOW, THEREFORE, BE IT RESOLVED AS FOLLOWS:**

FHSD will not utilize Critical Race Theory, intersectionality, identity, or anti-racism curriculum, for student education or any staff training. With this statement, FHSD reiterates that:

- Schools may not use race, socioeconomic class, religion, gender identity, sex, ethnicity, or culture as a consideration when hiring or administering academic programs or evaluation systems.
- Neither schools, nor instructors or guest speakers, shall have student participate in class or complete assignments that require, guide, or nudge the student to consider his or her race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture as a deficiency or a label to stereotype the student as having certain biases, prejudices or other unsavory moral characteristics or beliefs based on these immutable characteristics.
- Schools shall not discipline differently on the basis of race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture.
- Schools shall not engage in stereotyping based upon race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture, including ascribing character traits, values, moral and ethical codes, privileges, status, or belief.
- Schools shall not force individuals to admit privilege or oppression, or to "reflect," "deconstruct," or "confront" their identities based on race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture.

**BE IT ALSO RESOLVED:**

FHSD, as a whole, will embrace and implement a culture of kindness and equal opportunity for all students and staff.

Nothing in these resolutions shall be construed to restrict any expressive activities protected under the Constitution generally or the First Amendment to the United States Constitution specifically, including but not limited to academic freedom or student political speech.

ADOPTED AND APPROVED this (DATE)

_____

BOE President

ATTEST:

_____

SUPERINTENDENT