UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SARAH UPDIKE and JAMES UPDIKE Individually and as parents and next Friends of their minor children I.U, A.U. and K.U. , et al. | : | Case No.: 1:22-cv-00374 |
| | : | JUDGE MICHAEL BARRETT |
| Plaintiffs | : | MAGISTRATE STEPHANIE BOWMAN |
| vs. | : | |
| BOARD OF EDUCATION OF FOREST HILLS SCHOOL DISTRICT, et al. | : | **MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| | : | |
| Defendants. | : | |

In response to Defendants' Motion to Dismiss Plaintiffs' Initial Verified Complaint, the Plaintiffs

have decided to amend their Complaint and filed a First Amended Complaint for Temporary, Preliminary,

and Permanent Injunctive Relief and Declaratory Judgment. Because Plaintiffs' First Amended Complaint

suffers from the same deficiencies as the original Complaint, Defendants again submit a motion to dismiss.

Respectfully Submitted,

/s/ Bernard W. Wharton
R. Gary Winters, Esq. (0018680)
Bernard W. Wharton Esq. (0063487)
Ian R. Smith, Esq. (0068195)
McCaslin, Imbus & McCaslin
600 Vine Street, Suite 800
Cincinnati, OH 45202
(513) 421-4646 phone
(513) 421-7929 fax
rgwinters@mimlaw.com
bwwharton@mimlaw.com
irsmith@mimlaw.com
*Attorney for Defendants Sara Jonas,
Linda Hausfeld, Bob Bibb, Katie Stewart
Leslie Rasmussen, Larry Hook, Board of
Education of the Forest Hills School District
and The Forest Hills School District*

## MEMORANDUM OF LAW

### I. FACTUAL BACKGROUND

#### A. Affidavit of Larry Hook

On June 22, 2022, the Forest Hills School District Board of Education ("School Board") adopted a "resolution to create a cultural kindness and equal opportunity for all students and staff" ("Resolution"). The School Board has taken no steps to enact new policies or revise current policies to affect any enforcement of the Resolution. (Doc. 25, PAGEID #160). Under its bylaws in its policy manual, the School Board has defined a policy as a "general, written statement by the governing board which defines its expectation or position on a particular matter and authorizes appropriate action that must or may be taken to establish and/or maintain those expectations." (Doc. 25, PAGEID #159). The Resolution is not the same as a policy based on the Board's bylaws. (*Id.*).

The School Board is solely responsible for the management and control of the public schools in the School District as well as the employees, students, and all other persons entering upon its school grounds or premises. R.C. §3313.20, §3313.47. Board members as individuals do not separately possess the powers that reside in the Board of Education. The School Board shall make rules and regulations as are necessary for the governance of its employees and student and of its grounds or premises by adopting by-laws and policies for the organization and operation of the School District. (Doc. 25, PAGEID #160).

If policies of the School Board need to be revised, it is the duty of the Superintendent to bring that to the School Board's attention pursuant to Board policy. (Doc. 25, PAGEID #159). The School Board provides various reasons for reviewing its policies and procedures and has allocated to the Superintendent the responsibility for updating and reviewing Board policies. (Doc. 25, PAGEID #159,

2

167-170). With respect to the resolution in this matter, no School Board policies have been identified that need to be adopted, amended, or repealed in order to effectuate any portion of the resolution. (Doc. 25, PAGEID # 160).

The Superintendent has not identified any School Board policies that need to be revised as a result of the resolution. No new by-laws or policies have been proposed for adoption, amendment, or repeal. (*Id.*). The Superintendent has not designed or implemented any administrative guidelines under which the School District operates. (Doc. 25, PAGEID #161). The Superintendent has not identified any changes to the curriculum of the School District and the preparation of courses of study as a result of the resolution. (Doc. 25, PAGEID #162).

## B. New Factual Allegations

In the First Amended Complaint, Plaintiff have introduced new "factual" allegations. These are identified below.

### 1. The C.A.R.E. Committee

Plaintiffs allege the C.A.R.E. Committee was formed to support and implement the health and wellness cornerstone of the Forest Hills School District's educational mission. (Doc. 26, PAGEID #189). It was implemented, at least in part, due to suicides by students over the past several years. (*Id.*). Plaintiff Sarah Updike is alleged to have been part of the C.A.R.E. Committee and became part of the leadership of the C.A.R.E. Committee. (*Id.*) In that role, Plaintiff Sarah Updike brought information concerning diversity of the student body that she learned in professional development meetings to the Nagel Middle School where she taught. (Doc. 26, PAGEID #189-190).

Plaintiffs go on to allege Defendants Sara Jonas, Linda Hausfeld, Bob Bibb and Katie Stewart campaigned for School Board by opposing several issues including critical race theory, comprehensive sexuality education, social and emotional learning principles, and gender identity education and training.(Doc. 26, PAGEID #190). Plaintiffs also allege that the Defendant Board Members

3

listed above accused the C.A.R.E. Committee of attempting to indoctrinate students and teachers with critical race theory. (*Id.*). Upon being duly elected, Plaintiffs allege that these Defendant School Board members immediately began taking action to silence and censor speech within the Forest Hills School District with which they did not agree. (*Id.*). Plaintiffs also allege that in January of 2022, Plaintiff Sarah Updike was informed that the C.A.R.E. Committee had been disbanded and Plaintiffs allege, upon information and belief, that it was disbanded at the direction of the School Board. (Doc. 26, PAGEID #192).

## 2. Diversity Day

Plaintiffs allege that on March 30, 2022, the School Board canceled the annual Diversity Day event at Turpin High School. (*Id.*). After Diversity Day was rescheduled by School Administrators, the School Board voted to cancel it again and prohibited the event from taking place during school hours, using school resources, or through the use the school or taxpayer funded resources. (Doc 26, PAGEID #193). Plaintiffs allege that the speakers and organizers of Diversity Day are ready, willing and able to speak but are prevented from doing so by the Defendants. (*Id.*).

Plaintiffs allege that students, parents and residents of Forest Hills School District protested the School Board's decision. (*Id.*). Plaintiffs further allege that students at the two high schools in the Forest Hills School District planned to walk out in protest and that School Board Members inquired of the Superintendent as to the School District's definition of disruption, consequences for students walking out of school and disrupting the learning process, and that Defendant Linda Hausfeld took videos and/or pictures of protestors at a public School Board meeting. ( Doc. 26, PAGEID #193-194).

## 3. Go Offline Day

Plaintiffs also allege in the spring of 2022 that Nagel Middle School was forced to cancel its "Go Offline Day". (Doc. 26, PAGEID #195). This cancelation occurred around the same time as the School Board voted to cancel Diversity Day. (*Id.*). Plaintiffs alleged, upon information and belief, that Go Offline

4

Day was canceled at Nagel due to the School Board's cancelation of Diversity Day at Turpin High School. (*Id.*). Plaintiffs also allege that the speakers and organizers of Go Offline Day remain ready, willing and able to speak but are prevented from doing so by the Defendants. (*Id.*).

### 4. The Resolution

While previously the Plaintiffs had alleged that the Resolution was passed on June 22, 2022, the First Amended Complaint contains more allegations about statements made during the June 22, 2022 meeting by Defendant Sarah Jonas and Defendant Leslie Rasmussen. (Doc. 26, PAGEID #196-197).

Plaintiff, Sarah Updike alleges that topics she has taught her students in the past are now banned by the Resolution, although she is ready, willing and able to convey this information to her students. (Doc. 26, PAGEID #200). She also alleges that she intends to speak on the topic of "anti-racism" and that she will continue to organize and celebrate Black History Month at Nagel Middle School. (*Id.*). Plaintiffs also allege that educators, including Plaintiff Sarah Updike, have changed their curriculum and that certain topics may be censored by themselves. (Doc. 26, PAGEID #202-203).

### 5. Washington, D.C. Trip

Plaintiffs claim that on a trip for students to Washington D.C. in late June or early July, 2022, a Forest Hills staff member told the students to leave a presentation because the topics of the presentation "ran afoul of the broad prohibitions contained in the resolution." (Doc. 26, PAGEID #203). Plaintiffs allege this is an example of Forest Hills educators censoring speech. (*Id.*). Plaintiffs further claim that other educators have and will continue to do the same without giving any specifics. (*Id.*).

### 6. Surveys, Assessments and Evaluations

Plaintiffs claim, upon information and belief, that as a result of the Resolution many individualized surveys, assessments and evaluations have been prohibited within the Forest Hills School District. (*Id.*). Plaintiffs allege that Forest Hills' counselors have been directed not to use the term "SEL"

5

(which stands for social emotional learning) and that traditional individual needs assessments may no longer be conducted. Doc. 26, PAGEID # 204).( Individual needs assessments are a paper survey distributed to all students to gather individual information and evaluate social emotional well-being, academic and executive function and needs, and academic and future plans in order to assist counselors in identifying students that may need additional academic or other assistance. (Id.). Plaintiffs also allege that someone has directed schools within the district to cease conducting a school climate survey with the students. (Doc. 26, PAGEID #205).

Moreover, Plaintiffs allege that the Defendants have banned students from discussing and surveying other students regarding certain topics without "pre-approval", including with respect to their feelings regarding the Resolution. (Id.). Plaintiffs also allege that an unidentified high school student created a survey in early September, 2022. (Id.). The student used her Forest Hills School District Google account to create the survey but after she began receiving responses, the Defendants disabled her account, and she was told to cease her activities. (Doc. 26, PAGEID # 207). Plaintiffs allege that this student was told that only "pre-authorized" surveys could be created and sent on Forest Hills' accounts which the Plaintiffs allege is not a true requirement. (Id.).

7. Guest Speakers

Plaintiffs claim, upon information and belief, that the majority of the School Board now requires speakers at Forest Hills Schools to be pre-approved. (Doc. 26, PAGEID #208). Further, Plaintiffs allege that as a result of the Resolution there is a ban upon guest speakers who have students participate in activities that require them to consider their "race, socio-economic class, religion, gender identity, sex, sexual preference, ethnicity, culture as a deficiency or a label to stereotype the student as having certain biases, prejudices or other unsavory moral characteristics or beliefs based on these immutable characteristics." (Id.). Plaintiffs also allege that the Nagel Middle School sent an email with a permission slip to parents of students with a guest speaker release form. (Id.). This form allegedly indicates that the

speaker had been pre-approved based upon the alignment to the Forest Hills Strategic Plan, Forest Hills School District Cornerstones and the Forest Hills Portrait of a Learner as well as administrative guideline 2240. (*Id.*). The First Amended Complaint does not state what is contained in the Forest Hills Strategic Plan, the Forest Hills School District Cornerstones, the Forest Hills Portrait of a Learner or administrative guideline 2240. (*Id.*).

8. Bullying Issues

Plaintiffs allege that there is a significant amount of bullying that takes place by students within the Forest Hills School District and it is often directed at students of color or those who identify as LGBTQ+. (Doc. 26, PAGEID #209). Plaintiffs claim that educators who address this bullying to protect those being bullied and educate and discipline those students who are acting as bullies must have conversations related to race, anti-racism, gender identity and diversity. (*Id.*). The Resolution's ban on these categories of speech allegedly prohibits the Plaintiffs and other educators and administrators from protecting students who are being bullied. (*Id.*). The Plaintiffs do not allege how this prohibits educators and administrators from protecting students.

Plaintiff, Sarah Updike, also claims that she may be disciplined, and her employment terminated if she takes action to protect students from bullying and addressing bullying with offending students. (Doc. 26, PAGEID # 209-210). Plaintiff Sarah Updike also fears complaints, sanctions and discipline for continuing to teach material relating to race, anti-racism, gender or sexual orientation. (Doc. 26, PAGEID #210).

9. Redlining Video

Plaintiffs allege that in March of 2022, a student sent an email to Defendants, Linda Hausfeld, Sara Jonas, Bob Bibb, and Katie Stewart with a video that had been shown in an AP Human Geography class regarding the historical practice of redlining. (*Id.*). Plaintiffs also allege that Defendant Jonas emailed the Superintendent and the High School Principals asking how this was part of the approved

curriculum and wanted a full investigation and report back to the School Board. (*Id.*). Forest Hills Administrators investigated the teacher and concluded that the teacher complied with school policy by presenting multiple perspectives on an issue that is part of the curriculum for the class. (Doc. 26, PAGEID #210-211).

## 10. Advanced Placement Classes

Plaintiffs also allege that the Resolution jeopardizes Forest Hills' ability to offer advanced placement (AP) classes at its high schools. (Doc. 26, PAGEID #211). The basis for this allegation is the topics contained in certain AP classes purportedly run afoul of the resolution. (Doc. 26, PAGEID #212).. Plaintiffs also allege that Defendant Leslie Rasmussen has indicated that the College Board which created AP programs is looking into the Resolution and its impact upon Forest Hills' ability to offer AP classes. (*Id.*). There is no allegation that the College Board has determined that the Resolution will prohibit the AP classes offered by Forest Hills.

## 11. The Resolution

Plaintiffs also claim that the Defendants intend to enforce the resolution and have been steadfast in defending the validity of the resolution. (*Id.*). Plaintiffs cite to various public statements made by a spokesperson for the School Board as well as the fact that the School Board has not voted to rescind the Resolution. (Doc. 26, PAGEID #212-213). Plaintiffs also allege that the School Board Defendants violated the School Board's policies and by-laws by passing the Resolution and it is void as a result. This is not a factual allegation but simply legal argument. Plaintiffs also allege that the Resolution violates other existing school policies, the Ohio Administrative Code, the Ohio Revised Code, and the United States Constitution.

## II.    PLAINTIFFS' LEGAL CLAIMS

In their First Amended Complaint, the Plaintiffs have brought six counts of action. They are as follows:

1. Violation of the Fourteenth Amendment – void for vagueness under 42 U.S.C. §1983.

2. Violation of the First Amendment – right to receive information under 42 U.S.C. §1983.

3. Violation of the First Amendment – overbroad and viewpoint-based restriction on academic freedom under 42 U.S.C. §1983.

4. Violation of the Fourteenth Amended – race based and discriminatory purpose and invasion of parental liberty rights under 42 U.S.C. §1983.

5. Violation under Title VI of the Civil Rights Act of 1964.

6. Declaratory relief.

Plaintiffs have no standing for any of these claims and they should be dismissed.

## III.    LEGAL ARGUMENT

### A.  Motion to Dismiss Standard

Defendants are moving under Rule 12(b)(1) and 12(b)(6) for dismissal of the Plaintiff's Amended Verified Complaint. A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted because if the court lacks subject matter jurisdiction, the Rule 12(b)(6) motion becomes moot. *Castellon-Vogel v. Int'l Paper Co.*, 2020 U.S. Dist. LEXIS 35279 at *4 (S.D. Ohio). Fed. R. Civ. P. 12(b)(1) provides that an action may be dismissed for "lack of subject matter jurisdiction." When subject matter jurisdiction is challenged under Rule 12(b)(1), the Plaintiff has the burden of proving jurisdiction in order to survive the motion. *Castellon-Vogel, supra* at *4. To do so, the Plaintiff must show that the Amended Verified Complaint alleges a claim under federal law and that the claim is substantial. *Id.*

9

Furthermore, on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Under a Rule 12(b)(1) motion, the parties are free to supplement the record by affidavits, however, this supplementation does not convert the Rule 12(b)(1) motion into a Rule 56 summary judgment motion. *Id.* at 916.

## B. The Plaintiffs Still Lack Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *U.S. CONST., Art. III, § 2*). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2015). Standing is necessary for a court to exercise jurisdiction and is a threshold question that must be answered to determine if the court has the power to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). If the plaintiff fails to establish standing, a court must dismiss the complaint for lack of subject matter jurisdiction. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The plaintiff bears the burden of establishing standing. *Spokeo*, 578 U.S. at 338.

To establish standing under Article III of the U.S. Constitution, a plaintiff must establish the following:

1.    That the plaintiff has suffered an injury in fact;

2.    That it is fairly traceable to the challenged conduct of the defendant; and

3.    That it is likely to be redressed by a favorable judicial decision.

*Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

These elements are assessed by the court as of the time the complaint was filed. *Davis v. FEC*, 554 U.S. 724, 732 (2008). As the *Lujan* Court noted, "[t]he existence of federal jurisdiction ordinarily

10

depends on the facts **as they exist when the complaint is filed.**" 504 U.S. at 569, n.4 (emphasis in original). If the plaintiff fails to establish standing, the court must dismiss the complaint for lack of subject matter jurisdiction. *Lyshe,* 854 F.3d at 857.

To establish an injury in fact, a plaintiff must "show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"." *Spokeo,* at 339 (*quoting Lujan,* 509 U.S. at 560); *see also Finesse Express, LLC v. Total Quality Logistics, LLC,* 2021 U. S. Dist. LEXIS 60648 (March 30, 2021). In order for an injury to "concrete", it must actually exist. *Id.* at 340. (*citing* Black's Law Dictionary 506, 10th Ed. 2014). Concrete injuries can be either tangible or intangible. *Id.* at 339. "In determining whether intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.*

History plays a role because the courts have found it "instructive to consider whether an alleged intangible harm has a close relationship to a harm that is traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341. In addition, Congress' judgment is also instructive and important because it can identify intangible harms that meet minimum Article III requirements. *Id.* However, the role of Congress in identifying and elevating intangible harms does not mean that a Plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and proports to authorize that person to sue to vindicate that right. *Id.* Article III standing still demands a concrete injury even if there is a statutory violation. *Id.*

Plaintiffs' Amended Verified Complaint fails to establish that they have standing to bring their claims. As will be shown, they cannot meet any of the three elements to establish standing under Article III of the U.S. Constitution.

11

## 1. **The Plaintiffs have not suffered an injury in fact**

Preliminarily, most of Plaintiffs' new factual allegations do not provide grounds for standing because they did not involve or happen to any of the Plaintiffs. Specifically, there is no allegation that any of the Plaintiffs were involved in the Diversity Day cancellation, the Go Offline Day cancellation, the Washington, D.C. trip, the creation of surveys, assessments and evaluations, requests for guest speakers, the subject of bullying, the redlining video incident, or that any Plaintiff was refused permission to take any AP classes. It goes without saying that if the Plaintiffs were not involved in or directly affected by the complained of misconduct, then they do not have an injury that can provide standing for bringing a lawsuit. In fact, the only Plaintiff who is even mentioned in the new factual allegations is Plaintiff, Sarah Updike.

Plaintiffs have suffered no "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent" as those requirements are defined in *Spokeo*, *Id.* at 340. Indeed, a fair reading of Plaintiffs' Amended Complaint demonstrates that they have admitted that no such injury exists or is imminent, and that it is their fears of what might happen which serve as the basis of their claims. In examining Plaintiffs' Amended Complaint, their own allegations demonstrate that no injury has yet occurred. Plaintiffs allege that the resolution raises "numerous questions in the minds of teachers and students about the permissible scope of instruction and discussion". (Doc 26 PAGEID # 200, 201). Plaintiffs' Amended Complaint is replete with questions about what the resolution will allow or prohibit and describes possible outcomes with uncertain language such as "teachers may not fully teach and explore these topics with students"; "IU wonders how health and history classes will be taught"; one Plaintiff "feels confused and frightened of what [the resolution] is about" and Plaintiff Sarah Updike claims to be "unclear on what educators may and may not do under the resolution, and what we may and may not teach and discuss." (Doc. 26, PAGEID # 12, 15, 26). These claimed injuries are not particularized, personal and individual, or real and not abstract. These are simply fears of Plaintiffs about what might happen in the future; not what has already occurred. As is evidenced by the Affidavit of Larry Hook, no School Board

12

policies, procedures or curriculum have been changed as a result of the resolution. In fact, Defendants have stipulated that no such changes will occur during the pendency of litigation.

With respect to Plaintiffs' First Amendment claims, the Plaintiffs further lack standing because their fears of what might happen in the future are not an adequate substitute for "a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). The *Laird* court noted that the injury in fact alleged by the Plaintiffs was the basis of subjective perceptions, beliefs and apprehensions; much like the Plaintiffs in this case. *Id. at 13*. Without more, these allegations of the Plaintiffs are insufficient to justify this Court's jurisdiction. The Sixth Circuit has routinely held that no standing exists where a First Amendment plaintiff only alleges inhibition of speech without proof of a concrete harm. *Grendell v. Ohio Supreme Court*, 253 F.3d 828, 834 (6th Cir. 2001).

As noted above, any allegation in the Amended Complaint that does not involve the Plaintiffs cannot be an injury to the Plaintiffs. Thus, the Plaintiffs would lack standing for all of the new factual allegations that do not involve or were not directed at the Plaintiffs themselves. Furthermore, with respect to any student Plaintiffs, it is well established that they do not have a general constitutional right to participate in extra-curricular activities. *Lowery v. Euverard*, 497 F.3d 584, 589 (6th Cir. 2007). With respect to the actual allegations involving extra-curricular activities or matters not part of the curriculum, e.g., Diversity Day, Go Offline Day, student surveys for non-academic reasons, and guest speakers, the U.S. Supreme Court has held that:

"It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking the basis in wisdom or compassion... . The system of public education that has evolved in this nation relies necessarily upon the discretion and judgment of school administrators and school board members, and §1983 was not intended to be a vehicle for federal court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees."

*Wood v. Strickland*, 420 U.S. 308, 326 (1975).

13

Under Ohio law, the superintendent of the school district shall direct and assign teachers in the school district.  R.C. §3319.01.  It is not for the courts to question the motives of the superintendent where a decision is wholly within his or her discretion.  *Duer v. Bd. Of Education,* 1983 Ohio App. LEXIS 14762 @ *4-5 (8th Dist.).  It should also be noted that the school board has the management control of all of the public schools that it operates.  R.C. §3313.47.  In the exercise of their statutory powers, boards of education have a wide area of discretion with which the courts will not interfere in the absence of a showing of an abusive discretion.  *Lewis v. E. Clinton Local Sch. Dist. Bd. Of Educ.,* 1996 Ohio App. LEXIS 3486 at *4 (12th Dist.).  Thus, it is well within a school board and superintendent's powers to disband the C.A.R.E. Committee.

## 2. The Plaintiffs have no claimed injury which is fairly traceable to the resolution nor that can be redressed by a judicial decision

The last two requirements to establish standing under Article III require that the Plaintiffs show how their injury is traceable to the Defendants' conduct or how their injury can be redressed by a favorable judicial decision.  *Spokeo,* 578 U.S. at 338.  Traceability requires that the Defendants' action have a "causal connection" to the Plaintiffs' injury.  *Lujan,* 504 U.S. at 560.  Indirect harms typically fail to meet this element because harms that result from the independent actions of third parties are generally not traceable to the Defendant.  *Turaani v. Wray,* 988 F.3d 313, 316 (6th Cir. 2021).  An indirect theory of traceability requires that the government defendant cajole, coerce, or command the third party.  *Id.*  Venturing vague concerns does none of the above.  *Id.*

On the other hand, redressability "focuses...on whether the injury that a Plaintiff alleges is likely to be redressed through the litigation."  *Sprint Communs Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 287 (2008).  Redressability means that it is likely and not merely speculative that the Plaintiffs injury will be remedied by the relief that the Plaintiff seeks in bringing suit.  *Lujan,* 504 U.S. at 560 – 561.

14

Plaintiffs have failed to claim an injury that is fairly traceable to the resolution because they have suffered no harm nor are they likely to. None of the feared changes to the curriculum referred to in Plaintiffs' Amended Verified Complaint have occurred. (Doc. 25, PAGEID # 161, 162). These ephemeral concerns are not concrete enough to satisfy the standing requirement. Moreover, the fact that the School Board passed a resolution, without more, precludes the Plaintiffs from suffering any actual or potential injury without more action by the School Board. As for the redressability requirement of standing, without an actual injury, there is nothing to be redressed in this lawsuit. Accordingly, it is merely speculative that any injury of the Plaintiffs will be remedied by this lawsuit.

## C. Plaintiffs' Liberty Interest In The Education of The Students Are Not Violated

Plaintiffs' First Amended Complaint in Count IV alleges that the resolution violates the Plaintiffs' Fourteenth Amendment due process rights and liberty interest of parents and teachers in the education of their children and students. It is well established that the right of a parent to make decisions regarding the care, custody, and control of their children is a fundamental right. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). It is equally well established that this right is not without limits. *Blau v. Ft. Thomas Public Sch. Dist.*, 401 F.3d 381 (6th Cir., 2004). The 6th Circuit has pointed out:

The critical point is this: [w]hile parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right severally to direct how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities.""

*Blau*, 401 F.3d at 395 – 96.

Accordingly, despite Plaintiffs claim that their liberty interests are somehow impaired by the resolution, it is abundantly clear that the Courts have not extended the fundamental right for a parent to make decisions regarding the care, custody and control of their children to the decision as to how a public school teaches their child.

15

## D. The Individual Defendants Should Be Dismissed

Plaintiffs have sued the six individual Defendants in their official capacities as either a School Board Member or the Superintendent. (Doc. 1 PAGE ID #16). Official capacity claims are claims against the political entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The principal entity, the Board of Education of the Forest Hills School District, is named as a Defendant and thus the official capacity claims against the individual Defendants are redundant. *Parson v. Homer*, 2013 U.S. Dist. LEXIS 139340 at *6 (S.D. Ohio). The court should not permit these redundant claims to stand and should dismiss the individual Defendants since they are only sued in their official capacity which is more properly a claim against the School Board itself.

Furthermore, Defendant Larry Hook warrants dismissal for grounds particular to his situation. He was not employed by the Board of Education of the Forest Hills School District until August 1, 2022. Therefore, he had no role in drafting or passing the resolution as that occurred on June 22, 2022. (Doc 1, PAGE ID # 4). Certainly, Mr. Hook can bear no responsibility for the drafting of the resolution as he was not employed at the time it was passed.

Accordingly, all of the individual Defendants should be dismissed as they are only sued in the official capacities and only the School Board can serve as the proper Defendant for such claims.

## IV. CONCLUSION

For the foregoing reasons, the Defendants move this court to dismiss Plaintiffs' First Amended Verified Complaint.

Respectfully Submitted,

/s/ Bernard W. Wharton
R. Gary Winters, Esq. (0018680)
Bernard W. Wharton Esq. (0063487)
Ian R. Smith, Esq. (0068195)
McCaslin, Imbus & McCaslin
600 Vine Street, Suite 800
Cincinnati, OH 45202
(513) 421-4646 phone
(513) 421-7929 fax
rgwinters@mimlaw.com
bwwharton@mimlaw.com
irsmith@mimlaw.com
***Attorney for Defendants Sara Jonas,***
***Linda Hausfeld, Bob Bibb, Katie Stewart***
***Leslie Rasmussen, Larry Hook, Board of***
***Education of the Forest Hills School District***
***and The Forest Hills School District***

## CERTIFICATE OF SERVICE

.        I hereby certify that on the 12th day of October, 2022, a copy of the foregoing document was filed electronically and served through the court's electronic filing system via email to all parties of record.

/s/ Bernard W. Wharton
Bernard W. Wharton

G:\JEN\Forest Hills - Updike 22-06-28\Pleadings\Motion to Dismiss Ameded Verified Complaint.docx