UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SARAH UPDIKE and JAMES UPDIKE Individually and as parents and next Friends of their minor children I.U, A.U. and K.U. , et al. | : : : | Case No.: 1:22-cv-00374 JUDGE MICHAEL BARRETT |
| Plaintiffs | : | MAGISTRATE STEPHANIE BOWMAN |
| vs. | : | |
| BOARD OF EDUCATION OF FOREST HILLS SCHOOL DISTRICT, et al. | : : : | **DEFENDANTS' SARA JONAS, LINDA HAUSFELD, BOB BIBB, KATIE STEWART LARRY HOOK AND FOREST HILLS SCHOOL DISTRICT BOARD OF EDUCATION** |
| Defendants. | : | **MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

In response to the filing of Plaintiffs' Second Amended Complaint, for temporary, preliminary, and permanent injunctive relief and declaratory judgment, Defendants, Sara Jonas, Linda Hausfeld, Bob Bibb, Katie Stewart, Larry Hook and Forest Hills School District Board of Education (collectively hereinafter "Forest Hills") move this Court to dismiss Plaintiffs' Second Amended Complaint as it suffers from the same deficiencies found in the original Complaint and Plaintiffs' First Amended Complaint.

Respectfully Submitted,

/s/  Bernard W. Wharton
R. Gary Winters, Esq. (0018680)
Bernard W. Wharton Esq. (0063487)
Ian R. Smith, Esq. (0068195)
McCaslin, Imbus & McCaslin
600 Vine Street, Suite 800
Cincinnati, OH 45202
(513) 421-4646 phone
(513) 421-7929 fax
bwwharton@mimlaw.com
*Attorney for Defendants Sarah Jonas,*
*Linda Hausfeld, Bob Bibb, Katie Stewart*
*Leslie Rasmussen, Larry Hook, Board of*
*Education of the Forest Hills School District*
*and The Forest Hills School District*

<u>MEMORANDUM OF LAW</u>

I.    <u>FACTUAL BACKGROUND</u>

    A.  <u>Affidavit of Larry Hook</u>

On June 22, 2022, the Forest Hills School District Board of Education ("School Board") adopted a "resolution to create a cultural kindness and equal opportunity for all students and staff" ("Resolution"). The School Board has taken no steps to enact new policies or revise current policies to affect any enforcement of the Resolution. (See Aff. of Larry Hook at ¶ 16). Under its bylaws in its policy manual, the School Board has defined a policy as a "general, written statement by the governing board which defines its expectation or position on a particular matter and authorizes appropriate action that must or may be taken to establish and/or maintain those expectations." (See Aff. of Larry Hook at ¶ 5). The Resolution is not the same as a policy based on the Board's bylaws. (See Aff. of Larry Hook at ¶ 6).

The School Board is solely responsible for the management and control of the public schools in the School District as well as the employees, students, and all other persons entering upon its school grounds or premises. R.C. §3313.20, §3313.47. Board members as individuals do not separately possess the powers that reside in the Board of Education. The School Board shall make rules and regulations as are necessary for the governance of its employees and student and of its grounds or premises by adopting by-laws and policies for the organization and operation of the School District. (See Aff. of Larry Hook at ¶ 13).

If policies of the School Board need to be revised, it is the duty of the Superintendent to bring that to the School Board's attention pursuant to Board policy. (See Aff. of Larry Hook at ¶ 7). The School Board provides various reasons for reviewing its policies and procedures and has allocated to the Superintendent the responsibility for updating and reviewing Board policies. (See Aff. of Larry Hook at ¶¶ 8-12, Exhibits B-E). With respect to the resolution in this matter, no School Board policies have been

identified that need to be adopted, amended, or repealed in order to effectuate any portion of the resolution (See Aff. of Larry Hook at ¶ 16).

The Superintendent has not identified any School Board policies that need to be revised as a result of the resolution.  No new by-laws or policies have been proposed for adoption, amendment, or repeal. (See Aff. of Larry Hook at ¶ 16).  The Superintendent has not designed or implemented any administrative guidelines under which the School District operates. (See Aff. of Larry Hook at ¶ 19).  The Superintendent has not identified any changes to the curriculum of the School District and the preparation of courses of study as a result of the resolution. (See Aff. of Larry Hook at ¶ 27).

**B.  New Factual Allegations in the Second Amended Complaint[1]**

In the Second Amended Complaint, Plaintiffs have introduced several new "factual" allegations. They are as follows:

1. **School Board campaign platform from November, 2021**.

In paragraph 31 of the Second Amended Complaint, Plaintiffs allege that Defendants Sara Jonas, Linda Hausfeld, Bob Bibb and Katie Steward had a campaign platform for the November 2, 2021 School Board elections which included eliminating CRT as part of the curriculum in the Forest Hills School District.  This plan also included eliminating the C.A.R.E. Committee and the social/emotional principles it utilized.

2. **Disbanding of the C.A.R.E. Committee**.

In paragraph 37 of the Second Amended Complaint, Plaintiffs have added allegations concerning the testimony of Defendant Leslie Rasmussen that the prior Superintendent of Forest Hills told her that incoming Board Members had instructed to end the C.A.R.E. program.

---

[1] Forest Hills incorporates by reference herein its Motion to Dismiss Plaintiffs' First Amended Complaint which contains a thorough recitation of the new factual allegations found in the First Amended Complaint because those allegations are also contained in the Second Amended Complaint.  The arguments made in Forest Hills' Motion to Dismiss Plaintiffs' First Amended Complaint are specifically incorporated herein.

3.  **Diversity Day**

In paragraphs 39 and 40 Plaintiffs have added factual allegations that Diversity Day was canceled by a majority of the Defendant Board Members.  It is also alleged that Diversity Day was initially postponed when the prior Superintendent directed the Principal of Turpin High School to cancel it, purportedly at the direction of Defendant Sara Jonas and Defendant Linda Hausfeld.  Plaintiffs also allege that there was a motion to cancel diversity day passed at the May 1, 2022 Board Meeting, but the motion itself is not attached as an exhibit to the Second Amended Complaint.

4.  **Deposition of Sara Jonas**

Paragraphs 50 and 51 of the Second Amended Complaint contain new allegations from the deposition of Defendant Sara Jonas.  These paragraphs allege that the Resolution is a further action to implement the policy of Defendants that was established with the cancelation of Diversity Day and disbanding of the C.A.R.E. Team.  There is no allegation that the Resolution specifically mentions the C.A.R.E. Team or Diversity Day, thus raising the question of how Plaintiffs can connect these separate occurrences.

5.  **Stipulation of the parties**

In paragraph 63 of the Second Amended Complaint, Plaintiffs allege that the Defendants are taking action to enforce and implement the Resolution despite the stipulation entered into by the parties. However, these allegations contain no specific actions taken by the Defendants that purportedly violate the stipulation.  Moreover, the Plaintiffs have not raised this issue directly with the Court despite the Court's power to enforce the stipulation.

6.  **Events that occurred after the Resolution passed**.

In paragraphs 70-81 of the Second Amended Complaint, Plaintiffs provide a laundry list of incidents which they claim were caused by the Resolution.  These include a parent complaint about a teacher including a hyperlink on her email to a website explaining the importance of utilizing pronouns

chosen by an individual.  Plaintiffs allege that Defendant Katie Stewart indicated to the parent that this violated school policy and that Defendant Sara Jonas purportedly admitted during her deposition that the policy Defendant Katie Stewart was referring to was the Resolution.

Plaintiffs also allege that at a September 21, 2022 School Board Meeting, Defendant Katie Stewart made a motion to require students to utilize the bathroom that matched their sex assigned at birth rather than the sex with which they identified.  This motion was not passed and does not constitute any official action by the School Board.  Despite this fact, Plaintiffs allege that Katie Stewart's motion was an action to enforce the Resolution.

Plaintiffs also claim that the student and teacher Plaintiffs are denied equal protection to speak and receive information as a result of the Resolution.  Plaintiffs do not identify which specific equal access to educational resources and opportunities they are prevented from receiving.  Plaintiffs also allege that Defendant Katie Stewart has drafted the policy concerning her "desire" to ban transgender students from utilizing the bathroom of the gender with which they identify.  That policy is not alleged to have been presented to the Board for any official action.

Plaintiffs also allege that Defendants are enforcing the Resolution by censoring or banning books. In support of this allegation, Plaintiffs allege that certain Defendant Board Members have taken steps to review and/or form an advisory committee to review the books at the library of Nagel Middle School. There is no allegation that any books have since been censored or banned in actuality.  Plaintiffs also allege that books have not been added to school libraries in the District because educators fear that they will run afoul of the Resolution.  There are no specific allegations as to when that has occurred or to what materials are involved, much less who among the educators have made such decisions.

Finally, Plaintiffs have alleged that following the passage of the Resolution and the "cancellation" of Diversity Day, students at Turpin High School sought to establish a diversity club but were unable to do so because no teacher was willing to serve as a sponsor.

7. **Legislative privilege issue**

Paragraph 98 of the Plaintiffs' Second Amended Complaint, Plaintiffs claim that the Defendants have stipulated that the Resolution was legislation rather than a vision statement.  Plaintiffs also allege that the Defendants' counsel stipulated that the Resolution was legislation.  This is incorrect.  Plaintiffs misunderstand that legislative privilege attaches to all legislative acts, not "legislation" as alleged by the Plaintiffs.  This is discussed more fully within this Motion.

## II.   PLAINTIFFS' LEGAL CLAIMS

In their Second Amended Complaint, the Plaintiffs have brought seven causes of action.  They are as follows:

1. Violation of the Fourteenth Amendment – Void for Vagueness Under 42 U.S.C. §1983.

2. Violation of the First Amendment – Right to Receive Information Under 42 U.S.C. §1983

3. Violation of the First Amendment – Freedom of Expression Including Academic Freedom; Overbroad; Viewpoint Based Restriction Under 42 U.S.C. §1983.

4. Violation of the Fourteenth Amendment – Race Based and Discriminatory Purpose; Invasion of Parental Liberty Rights Under 42 U.S.C. §1983;

5. Violation of the Equal Protection Clause of the Fourteenth Amendment Under 42 U.S.C. §1983.

6. Claim for Relief Under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000(d) et seq.

7. Declaratory Relief.

Because Plaintiffs have no standing for any of these legal claims, Forest Hills moves that they should be dismissed.

## III.   LEGAL ARGUMENT  [2]

### A.   Standards for Motions to Dismiss

_____

[2] Because Plaintiffs' First Amended Complaint was the subject of the Motion to Dismiss that was not subjected to a Motion to Dismiss, the Motion to Dismiss Plaintiffs' First Amended Complaint is incorporated by reference herein.

Defendants are moving under Rule 12(b)(1) and 12(b)(6) for dismissal of the Plaintiff's Amended Verified Complaint.  A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted because if the court lacks subject matter jurisdiction, the Rule 12(b)(6) motion becomes moot.  *Castellon-Vogel v. Int'l Paper Co.*, 2020 U.S. Dist. LEXIS 35279 at *4 (S.D. Ohio). Fed. R. Civ. P. 12(b)(1) provides that an action may be dismissed for "lack of subject matter jurisdiction."  When subject matter jurisdiction is challenged under Rule 12(b)(1), the Plaintiff has the burden of proving jurisdiction in order to survive the motion.  *Castellon-Vogel, supra* at *4.  To do so, the Plaintiff must show that the Amended Verified Complaint alleges a claim under federal law and that the claim is substantial.  *Id.*

Furthermore, on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes.  *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  Under a Rule 12(b)(1) motion, the parties are free to supplement the record by affidavits, however, this supplementation does not convert the Rule 12(b)(1) motion into a Rule 56 summary judgment motion. *Id.* at 916.

### B.  The Plaintiffs Still Lack Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (q*uoting U.S. CONST., Art. III, § 2*).  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2015).   Standing is necessary for a court to exercise jurisdiction and is a threshold question that must be answered to determine if the court has the power to entertain the suit.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  If the plaintiff fails to establish standing, a court must dismiss the complaint for lack of subject matter jurisdiction.  *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).  The plaintiff bears the burden of establishing standing.  *Spokeo,* 578 U.S. at 338.

To establish standing under Article III of the U.S. Constitution, a plaintiff must establish the following:

1.  That the plaintiff has suffered an injury in fact;

2.  That it is fairly traceable to the challenged conduct of the defendant; and

3.  That it is likely to be redressed by a favorable judicial decision.

*Id.* (*citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

These elements are assessed by the court as of the time the complaint was filed. *Davis v. FEC*, 554 U.S. 724, 732 (2008). As the *Lujan* Court noted, "[t]he existence of federal jurisdiction ordinarily depends on the facts **as they exist when the complaint is filed**." 504 U.S. at 569, n.4 (emphasis in original). If the plaintiff fails to establish standing, the court must dismiss the complaint for lack of subject matter jurisdiction. *Lyshe*, 854 F.3d at 857.

To establish an injury in fact, a plaintiff must "show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"." *Spokeo,* at 339 (*quoting Lujan,* 509 U.S. at 560); *see also Finesse Express, LLC v. Total Quality Logistics, LLC*, 2021 U. S. Dist. LEXIS 60648 (March 30, 2021). In order for an injury to "concrete", it must actually exist. *Id.* at 340. (*citing* Black's Law Dictionary 506, 10th Ed. 2014). Concrete injuries can be either tangible or intangible. *Id.* at 339. "In determining whether intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.*

History plays a role because the courts have found it "instructive to consider whether an alleged intangible harm has a close relationship to a harm that is traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341. In addition, Congress' judgment is also instructive and important because it can identify intangible harms that meet minimum Article III

requirements.  *Id.* However, the role of Congress in identifying and elevating intangible harms does not mean that a Plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and proports to authorize that person to sue to vindicate that right.  *Id.*  Article III standing still demands a concrete injury even if there is a statutory violation.  *Id.*

Plaintiffs' Amended Verified Complaint fails to establish that they have standing to bring their claims.  As will be shown, they cannot meet any of the three elements to establish standing under Article III of the U.S. Constitution.

### 1.   The Plaintiffs have not suffered an injury in fact

Preliminarily, most of Plaintiffs' new factual allegations do not provide grounds for standing because they did not involve or happened to any of the Plaintiffs.  Specifically, there is no allegation that any of the Plaintiffs were involved in the Diversity Day cancelation, the Go Offline Day cancelation, the Washington, D.C. trip, the creation of surveys, assessments and evaluations, requests for quest speakers, the subject of bullying, the redlining video incident, or was refused permission to take any AP classes.  It goes without saying that if the Plaintiffs were not involved in or directly affected by the complained of misconduct, then they simply do not have an injury that can provide standing for bringing a lawsuit.  In fact, the only Plaintiff who is even mentioned in the new factual allegations is Plaintiff, Sarah Updike.

Plaintiffs also have suffered no "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent" as those requirements are defined in *Spokeo*, *Id.* at 340.  Indeed, a fair reading of Plaintiffs' Amended Complaint demonstrates that they have admitted that no such injury exists or is imminent, and that it is their fears of what might happen which serve as the basis of their claims.  In examining Plaintiffs' Amended Complaint, their own allegations demonstrate that no injury has yet occurred.  Plaintiffs allege that the resolution raises "numerous questions in the minds of teachers and students about the permissible scope of instruction and discussion".  Plaintiffs' Second Amended

Complaint is replete with questions about what the resolution will allow or prohibit and describes possible outcomes with uncertain language such as "teachers may not fully teach and explore these topics with students"; "IU wonders how health and history classes will be taught"; one Plaintiff "feels confused and frightened of what [the resolution] is about" and Plaintiff Sarah Updike claims to be "unclear on what educators may and may not do under the resolution, and what we may and may not teach and discuss." (Doc. 26, PAGE ID # 12, 15, 26). These claimed injuries are not particularized, personal and individual, or real and not abstract. These are simply fears of Plaintiffs about what might happen in the future; not what has already occurred. As is evidenced by the Affidavit of Larry Hook, no School Board policies, procedures or curriculum have been changed as a result of the resolution. In fact, Plaintiffs have stipulated that no such changes will occur during the pendency of litigation.

With respect to Plaintiffs' First Amendment claims, the Plaintiffs further lack standing because their fears of what might happen in the future are not an adequate substitute for "a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). The *Laird* court noted that the injury in fact alleged by the Plaintiffs was the basis of subjective perceptions, beliefs and apprehensions; much like the Plaintiffs in this case. *Id. at 13.* Without more, these allegations of the Plaintiffs are insufficient to justify this Court's jurisdiction. The Sixth Circuit has routinely held that no standing exists where a First Amendment plaintiff only alleges inhibition of speech without proof of a concrete harm. *Grendell v. Ohio Supreme Court*, 253 F.3d 828, 834 (6th Cir. 2001).

As noted above, any allegation in the Complaint that does not involve the Plaintiffs cannot be an injury to the Plaintiffs. Thus, the Plaintiffs would lack standing for all of the new factual allegations that do not involve or were not directed at the Plaintiffs themselves. Furthermore, with respect to any student Plaintiffs, it is well established that they do not have a general constitutional right to participate in extra-curricular activities. *Lowery v. Euverard*, 497 F.3d 584, 589 (6th Cir. 2007). With respect to the actual allegations involving extra-curricular activities or matters not part of the curriculum, e.g. Diversity Day, Go

10

Offline Day, student surveys for non-academic reasons, and guest speakers, The U.S. Supreme Court has held that:

> "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking the basis in wisdom or compassion… . The system of public education that has evolved in this nation relies necessarily upon the discretion and judgment of school administrators and school board members, in §1983 was not intended to be a vehicle for federal court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees."
>
> *Wood v. Strickland*, 420 U.S. 308, 326 (1975).

Under Ohio law, the superintendent of the school district shall direct and assign teachers in the school district. R.C. §3319.01. It is not for the courts to question the motives of the superintendent where a decision is wholly within his or her discretion. *Duer v. Bd. Of Education*, 1983 Ohio App. LEXIS 14762 @ *4-5 (8th Dist.). It should also be noted that the school board has the management control of all of the public schools that it operates. R.C. §3313.47. In the exercise of its statutory powers, boards of education have a wide area of discretion with which the courts will not interfere in the absence of a showing of an abusive discretion. *Lewis v. E. Clinton Local Sch. DIst. Bd. Of Educ.*, 1996 Ohio App. LEXIS 3486 at *4 (12th Dist.). Thus, it is well within a school board and superintendent's powers to disband the CARE Committee.

In short, none of the Plaintiffs have identified a specific injury in fact that has happened to them and that can be logically and fairly connected to the Resolution itself. Furthermore, any allegations in the Second Amended Complaint concerning acts that were not official acts of the School Board cannot be used as a basis to alleged liability on behalf of the School Board. Specifically, one of the School Board Members raising the issue of transgender bathroom usage, without any official action by the Board, cannot serve as the basis for any complaint. Accordingly, Defendants respectfully submit that none of the Plaintiffs have suffered an injury in fact and have no standing to bring claims against the Defendants.

**2.** **The Plaintiffs have no claimed injury which is fairly traceable to the resolution nor that can be redressed by a judicial decision**

The last two requirements to establish standing under Article III require that the Plaintiffs show how their injury is traceable to the Defendants' conduct or how their injury can be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338. Traceability requires that the Defendants' action have a "causal connection" to the Plaintiffs' injury. *Lujan*, 504 U.S. at 560. Indirect harms typically fail to meet this element because harms that result from the independent actions of third parties are generally not traceable to the Defendant. *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021). An indirect theory of traceability requires that the government defendant cajole, coerce, or command the third party. *Id.* Venturing vague concerns does none of the above. *Id.*

On the other hand, redressability "focuses…on whether the injury that a Plaintiff alleges is likely to be redressed through the litigation." *Sprint Communs Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008). Redressability means that it is likely and not merely speculative that the Plaintiffs injury will be remedied by the relief that the Plaintiff seeks in bringing suit. *Lujan,* 504 U.S. at 560 – 561.

Plaintiffs have failed to claim an injury that is fairly traceable to the resolution because they have suffered no harm nor are they likely to. None of the feared changes to the curriculum referred to in Plaintiffs' Amended Verified Complaint have occurred. (Aff. at Larry Hook at ¶¶ 23, 27). These ephemeral concerns are not concrete enough to satisfy the standing requirement. Moreover, the fact that the School Board passed a resolution, without more, precludes the Plaintiffs from suffering any actual or potential injury without more action by the School Board. As for the redressability requirement of standing, without an actual injury, there is nothing to be redressed in this lawsuit. Accordingly, it is merely speculative that any injury of the Plaintiffs will be remedied by this lawsuit.

**C.** **Plaintiffs' Liberty Interest In The Education of The Students Is Not Violated**

Plaintiffs' First Amended Complaint in Count IV alleges that the resolution violates the Plaintiffs' Fourteenth Amendment due process rights and liberty interest of parents and teachers and the education of their children and students. It is well established that the right of a parent to make decisions regarding the care, custody, and control of their children is a fundamental right. *Troxel v. Granville*, 530 U.S. 57, 65 (2000), It is equally well established that this right is not without limits. *Blau v. Ft. Thomas Public Sch. Dist.*, 401 F.3d 381 (6th Cir., 2004). The 6th Circuit has pointed out:

> The critical point is this: [w]hile parents may have a fundamental right to decide whether to send their child to a public school, they do have a fundamental right general to direct how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities.""

*Blau*, 401 F.3d at 395 – 96.

Accordingly, Plaintiffs claim that their liberty interests are somehow impaired by the resolution, it is abundantly clear that the Courts have not extended the fundamental right for a parent to make decisions regarding the care, custody and control of their children to a decision as to how a public school teaches their child.

**D.** **The Individual Defendants Should Be Dismissed**

Plaintiffs have sued the six individual Defendants in their official capacities as either a School Board Member or the incoming Superintendent. (Doc. 1 PAGE ID #16). Official capacity claims are claims against the political entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 – 66 (1985). The principal entity, the Board of Education of the Forest Hills School District, is named as a Defendant and thus the official capacity claims against the individual Defendants are redundant. *Parson v. Homer*, 2013 U.S. Dist. LEXIS 139340 at *6. The court should not permit these redundant claims to stand and should dismiss the

individual Defendants since they are only sued in their official capacity which is more properly a claim against the School Board itself.

Furthermore, Defendant Larry Hook warrants dismissal for grounds particular to his situation. He was not employed by the Board of Education of the Forest Hills School District until August 1, 2022. Therefore, he had no role in drafting or passing the resolution as that occurred on June 22, 2022. (Doc 1, PAGE ID # 4). Certainly, Mr. Hook can bear no responsibility for the drafting of the resolution as he was not employed at the time it was passed.

Accordingly, all of the individual Defendants should be dismissed as they are only sued in the official capacities and School Board can serve as the proper Defendant for such claims.

### IV. CONCLUSION

For the foregoing reasons, the Defendants respectfully submit that all claims against all Defendants should be dismissed with prejudice and at cost to the Plaintiffs.

Respectfully Submitted,

/s/ Bernard W. Wharton
R. Gary Winters, Esq. (0018680)
Bernard W. Wharton Esq. (0063487)
Ian R. Smith, Esq. (0068195)
McCaslin, Imbus & McCaslin
600 Vine Street, Suite 800
Cincinnati, OH 45202
(513) 421-4646 phone
(513) 421-7929 fax
bwwharton@mimlaw.com
*Attorney for Defendants Sarah Jonas,*
*Linda Hausfeld, Bob Bibb, Katie Stewart*
*Leslie Rasmussen, Larry Hook, Board of*
*Education of the Forest Hills School District*
*and The Forest Hills School District*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of July, 2023, a copy of the foregoing document was filed electronically and served through the court's electronic filing system via email to all parties of record.

/s/ Bernard W. Wharton
Bernard W. Wharton

G:\JEN\Forest Hills - Updike 22-06-28\Pleadings\Motion to Dismiss Second Amended Complaint.docx