IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **SARAH UPDIKE, *et al.*** | : | Case No. 1:22-cv-00374 |
| | : | |
| Plaintiffs, | : | Judge Michael R. Barrett |
| | : | |
| v. | : | **PLAINTIFFS' MEMORANDUM IN** |
| | : | **OPPOSITION TO DEFENDANTS** |
| **SARA JONAS, *et al.*** | : | **SARA JONAS, LINDA HAUSFELD,** |
| | : | **KATIE STEWART, LARRY HOOK** |
| Defendants. | : | **AND THE FOREST HILLS SCHOOL** |
| | : | **DISTRICT BOARD OF** |
| | : | **EDUCATION'S MOTION TO** |
| | : | **DISMISS SECOND AMENDED** |
| | : | **COMPLAINT (Doc. #53)** |

## I.  INTRODUCTION

Defendants Sara Jonas, Linda Hausfeld, Katie Stewart, Larry Hook (the "Individual Defendants") and the Forest Hills School District Board of Education (the "Board) (all collectively referred to herein as "Forest Hills" or "Defendants") seek dismissal of all of Plaintiffs' claims pursuant to Civil Rules 12(b)(1) and 12(b)(6) on the basis of Plaintiffs' alleged lack of standing to challenge the Resolution to Create a Culture of Kindness and Equal Opportunity for All Students and Staff for a Culture of Kindness (the "Resolution"). Specifically, Defendants argue the Resolution at issue is not a policy, and no actions have been taken to enforce it, and thus there is no injury in fact that may be redressed in this litigation. Defendants are wrong both factually and legally. Plaintiffs have standing to pursue all of their claims, especially under the relaxed standing analysis applicable to First Amendment claims. Defendants' Motion to Dismiss should be denied.

## II.  SECOND AMENDED COMPLAINT AND DEPOSITIONS OF DEFENDANTS

### A.  Summary of the Allegations of the Second Amended Complaint

Plaintiffs are educators, parents, students and residents within the Forest Hills School District ("FHSD") challenging the race-based, unprecedented and unconstitutional censorship of

1

discussions about "anti-racism," race, gender, identity and other subject matters in schools and in training through the passage by the Board of the Resolution on June 22, 2022.[1] Plaintiffs' claims include: Count I – Violation of Fourteenth Amendment – Vagueness; 42 U.S.C. §1983; Count II – Violation of First Amendment – Right to Receive Information; 42 U.S.C. §1983; Count III – Violation of First Amendment – Freedom of Expression including Academic Freedom, Overbreadth, Viewpoint-Based Restriction; 42 U.S.C. §1983; Count IV – Violation of Fourteenth Amendment – Race-Based and Discriminatory Purpose; Invasion of Parental Liberty; 42 U.S.C. §1983; Count V – Violation of Equal Protection Clause of Fourteenth Amendment; 41 U.S.C. §1983; Count VI – Relief Under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000(d) ("Title VI"); and Count VII – Declaratory Relief.

Among other things, the Resolution's most egregiously unconstitutional provisions include the following prohibitions:

- "FHSD **will not utilize Critical Race Theory, intersectionality, identity, or anti-racism curriculum, for student, education or any staff training**."

- "WHEREAS**, Critical Race Theory (CRT), anti-racism, and all related euphemistic surrogates should similarly not be advocated in any form**, in FHSD's curricula or staff training.'"

- "Schools may not use race, socioeconomic class, religion, gender identity, sex, ethnicity, or culture as a consideration when hiring **or administering academic programs or evaluation systems.**"

- "Neither schools, nor instructors or guest speakers, **shall have students participate in class or complete assignments that require, guide, or nudge** the student to consider his or her race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture as a deficiency or a label to stereotype the student as having certain biases, prejudices or other unsavory moral characteristics or beliefs based on these immutable characteristics."[2]

---

[1] *See* Second Amended Compl. ("SAC"), Doc. #51, ¶¶1, 13-16.
[2] SAC, Ex. A and ¶54 (emphasis added).

Defendant Sara Jonas, the purported author of the Resolution, testified the Resolution was necessitated at least in part due to Diversity Day and the work of the CARE Team, and she stated during the public meeting where the Resolution was passed that it was just a further action *to implement already existing policies of the District*, including but not limited to its existing Controversial Issues Policy to which the Resolution expressly cites.[3]  The Board majority then handpicked a new superintendent -- Defendant Larry Hook -- willing to enforce the Resolution.[4]

The Resolution has already been implemented, has caused harm, and will continue to cause harm as demonstrated by the following examples:

- Following passage of the Resolution, FHSD educators were on a trip to Washington D.C. with FHSD students. The students were instructed by FHSD staff to leave a presentation on the topic of social and racial justice in education, as the topics of the presentation ran afoul of the prohibitions contained in the Resolution.[5]

- Following passage of the Resolution and even following entry of the Stipulation in this case whereby Defendants agreed they would not take any action to enforce or implement the Resolution during the pendency of this lawsuit (the "Stipulation"), Defendants sought to discipline a teacher for violating the Resolution by her use of pronouns following her name and the inclusion of a link to explain the importance of utilizing the pronouns chosen by an individual.[6]

- Following passage of the Resolution and entry of the Stipulation, on or about September 21, 2022, during a Board meeting, Defendant Stewart made a motion to require students to utilize the bathroom which matched their sex assigned at birth rather than the gender with which they identified, directly targeting trans students at FHSD, including several student Plaintiffs.  Defendant Stewart's motion was an action to enforce the Resolution.[7]

- Defendant Stewart has recently drafted *another* policy in furtherance of the Resolution and her desire to ban transgender students, including student Plaintiffs, from utilizing the bathroom of the gender with which they identify.[8]

- Students and teachers within FHSD, including Plaintiffs, are aware of this and other actions to enforce the Resolution and have suffered injury and harm as a result.  For example, at one student Plaintiff is a trans student who is so fearful of his safety and the possibility of

---

[3] SAC, ¶¶48, 51, 101; *See* SAC, Ex. A; Depo. of Larry Hook, Doc. 40, at PAGEID 605.
[4] SAC, ¶66.
[5] SAC, ¶70.
[6] SAC, ¶72, 73
[7] SAC, ¶75, 78.
[8] SAC, ¶79.

discipline and embarrassment as a result of Defendants' actions to pass and implement the Resolution that he is unwilling to utilize the bathroom at all during the school day.[9]

- The topics of "Diversity Day" are now banned by the Resolution.[10]

- As a result of the Resolution, Defendants are also denying students, including the student Plaintiffs, additional rights of free expression by banning students from discussing and surveying other students regarding certain topics without "pre-approval," including with respect to their feelings regarding the Resolution, its impact upon their learning, and thus the harm and injury they have suffered as a result.[11]

  - For example, on or about September 8, 2022, an FHSD high school student created a survey she sought to send to other students at the FHSD high school to discuss and allow them to express their opinions on the Resolution and its impact upon their education. Shortly after the student send the survey and began receiving responses, Defendants "disabled" the student's account and she was instructed to cease her activities. The student discontinued her activities out of fear of further discipline.[12]

- Upon information and belief, Defendants have taken steps to enforce the Resolution by censoring or banning books which discuss topics banned by the Resolution.[13]

- Upon information and belief, the Board majority now requires speakers within FHSD schools to be "pre-approved," and this requirement is being enforced, at least in part, as a result of the Resolution including its ban upon "guest speakers" who have FHSD students participate in activities that require consideration of topics banned by the Resolution.[14]

- Educators within FHSD, including Plaintiff Sarah Updike, must consider the race, socioeconomic class, religion, gender identity, sex, ethnicity and/or culture of students for a variety of reasons, including but not limited to, when developing appropriate IEP or other educational plans for students with special needs or who need extra assistance in one or more academic areas, in determining the underlying causes of delay in academic development and plans to support a student, and in protecting students and responding to bullying by other students on one or more of these bases.[15] However, the Resolution now prohibits them from doing so because many individualized surveys, assessments and evaluations touch upon or consider race, socioeconomic class, religion, gender identity, sex, ethnicity and culture in identifying student needs, and are accordingly banned by the Resolution's prohibitions in the administration of "academic programs" or "evaluation systems."[16]

---

[9] SAC, ¶76.
[10] SAC, ¶58.
[11] SAC, ¶84, 85.
[12] SAC, ¶85.
[13] SAC, ¶80.
[14] SAC, ¶¶88-90.
[15] SAC ¶25.
[16] SAC, ¶71.

- Teachers within FHSD, including Plaintiff Updike, are aware of the actions of Defendants to enforce the Resolution cited above, and fear similar enforcement action and discipline against them as a result.[17]  Plaintiff Updike and other teachers, counselors and employees within FHSD are and remain ready, willing and able speakers on the topics banned by the Resolution but have curtailed their speech as a result of the Resolution.  Students, including the student Plaintiffs, would have received access to these ideas and speech, but for the existence of the Resolution.[18]

- The Resolution has caused educators, including Plaintiff Sarah Updike, to make changes to their planned curriculum and censor certain speech and topics on which they would otherwise teach students to avoid discipline for violating the Resolution. For example, Ms. Updike is uncertain whether she may purchase or utilize texts and materials relating to, for example, religion, race, or gender identity in the classroom. Were it not for the Resolution, Ms. Updike would also freely teach and discuss these topics as well as the topic of intersectionality. Students are denied access to these ideas and speech.[19]

- Books have not been added to FHSD school libraries as a result of the Resolution because educators fear that they run afoul of the Resolution as they discuss topics banned by the Resolution (such as gender identity).  These educators seek to present ideas and information to students through these books and through discussions regarding the same but are unable to do so as a result of the Resolution, and students, including the student Plaintiffs, are denied access to information and ideas as a result.[20]

- Following passage of the Resolution, students at Turpin High School within FHSD sought to establish a Diversity Club.  No teacher at FHSD was willing to serve as a teacher sponsor of the Diversity Club as a result of the Resolution and their fear of discipline.[21]

- There is a significant amount of bullying that takes place by students within FHSD, often directed to students of color or those who identify as LGBTQ+. Educators, including Ms. Updike, have been required to address this bullying to protect those being bullied and educate and discipline those students who are acting as the bullies, and they must have conversations related to, among other things, race, "anti-racism," gender identity, and diversity in order to effectively do so. This Resolution's ban on these categories of speech disarms Ms. Updike and other educators and administrators from protecting students who are being bullied, and preventing and addressing bullying which does occur. The Resolution places bullied children at further risk, and denies students access to these ideas, speech and education.[22]

---

[17] SAC, ¶74, 76; *see also* Depo. Rasmussen, Doc. 41, at PAGEID 64-65.
[18] SAC, ¶83.
[19] SAC, ¶64; *see also* SAC, ¶¶67-68.
[20] SAC, ¶81.
[21] SAC, ¶82.
[22] SAC, ¶91.

Additional prior conduct of the Board demonstrates the threat and imminence of further injury. Other teachers within FHSD have been investigated at this Board's direction in response to complaints for exposing students to views with which the Board majority does not agree and teaching on topics considered to be "controversial." Specifically, this Board has taken action against an FHSD teacher who taught redlining in a high school AP history class, allegedly for violating the District's Controversial Issues Policy which, as noted above, is one of the existing FHSD policies Defendant Jonas indicated the Resolution was further implementing.[23] Teaching regarding racial "redlining" and the impact of racism in the law is banned by the Resolution's prohibition upon, among other things, teaching regarding "anti-racism," and thus there is a real, concrete and imminent threat of discipline and harm/injury to teachers who teach such topics, and the loss by students, including Plaintiffs, of access to this speech and ideas.[24]

Similarly, following the Board's cancellation of Diversity Day, certain Board member Defendants inquired of the superintendent about disciplinary action that could be taken against students to who sought to peacefully protest the Board's decision.[25]

Based upon the statements and prior conduct of this Board majority and FHSD, Plaintiff Sarah Updike fears that the teaching and discussions in which she intends to continue including, for example, with respect to "anti-racism" and gender identity, and taking action to protect students from bullying and addressing bullying by offending students, will lead to discipline and the termination of her employment because such actions violate the Resolution's prohibitions. Ms. Updike fears complaints, sanctions and discipline for continuing to teach material relating to race, anti-racism, gender or sexual orientation, among other things. Her fear of discipline and

---

[23] SAC, ¶93; *see also* SAC, ¶¶48, 51, 101.
[24] SAC, ¶94.
[25] SAC, ¶44.

termination has also chilled her speech.[26] Defendants' conduct as described herein also demonstrates a real and imminent threat of discipline and further injury to students, including student Plaintiffs, who seek to express themselves in opposition to the Board, with respect to ideas with which the Board does not agree, or in opposition to the Board's actions.[27]

Defendants have not disavowed their intention to enforce the Resolution. Nor have they disavowed an intention to discipline educators such as Plaintiff Sarah Updike, or the student Plaintiffs, for violating its provisions. Instead, the Board has refused to rescind the resolution and instead continues to enforce it and makes plans for further enforcement.[28]

## B. The Affidavit of Larry Hook Submitted by Defendants, and the Depositions of Defendants Hook, Jonas, and Rasmussen

During their depositions, Defendants Hook, Jonas and Rasmussen largely confirmed the events and conduct cited by Plaintiffs in the Second Amended Complaint.[29] Defendants, in their Motion to Dismiss the Second Amended Complaint, likewise do not dispute these allegations regarding the existence of these actions and conduct.

Instead, Defendants cite to the Affidavit of Larry Hook, filed on 8/23/22 (Doc. #23) prior to his deposition. Therein, Defendant Hook takes the position that the Resolution is not a policy because the processes and procedures necessary to adopt policies have not been implemented nor followed.[30] However, during his deposition Mr. Hook recognized that, in addition to a statement of belief, a resolution can mean something that requires action, or a formal expression of intent

---

[26] SAC, ¶92.

[27] SAC, ¶96.

[28] SAC, ¶52; *see also* SAC, ¶98; *see also* Depo. Jonas, Doc. #39, at PAGEID 403-404.

[29] *See, e.g.,* Hook Depo., Doc. 40, PAGEID 680-88 (acknowledging incident whereby teacher who utilized pronouns and link in her signature block was referred by Board member to administration for action); Hook Depo., Doc. 40, PAGEID (93-94) (acknowledging students left Washington DC presentation due to the topic being discussed); Hook depo., Doc. 40, PAGEID 657-59, 667-68 (acknowledging that student account was frozen following distribution of survey regarding student feelings on the Resolution); Hook Depo., Doc. 40, PAGEID 679 (acknowledging his awareness of one teacher who specifically referenced the passage of the Resolution as basis for decision to quit).

[30] *See* Aff. of Hook, ¶¶6, 7-27.

voted by an official body.[31] Moreover, he admitted that his use of the word "policy" in his affidavit related to his understanding of the definition of the word "policy" in the written FHSD policy book. There is no definition of "resolution" in the FHSD policy book.[32] He further admitted he does not know if the same procedures apply for passage of a "resolution" as those cited in his affidavit for passage of a "policy."[33] And Mr. Hook admitted he does not know what constitutes a "policy, practice or custom" under the law for purposes of 42 U.S.C. §1983.[34] Mr. Hook further acknowledged unwritten policies exist within FHSD.[35]

Moreover, during the deposition of Sara Jonas taken in this case, Defendants admitted the Resolution was legislation rather than a mere unenforceable "vision statement" by objecting and refusing to answer questions about the Resolution on the basis of "legislative privilege."[36]

## III.   ARGUMENT

### A.   Standard Applicable to Rule 12(b)(1) and 12(b)(6) Motions to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* The Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Nuritdinov v. Meda-Care Trans. Inc.*, No. 1:22-CV-443, 2023 WL 4571241, at *2 (S.D. Ohio July 18, 2023).

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams*

[31] Depo. Hook, Doc. 40, PAGEID 596, 601.
[32] Depo. Hook, Doc. 40, PAGEID 38.
[33] Depo. Hook Doc. 40, PAGEID 608.
[34] Depo. Hook Doc. 40, PAGEID 599-601.
[35] Depo. Hook Doc. 40, PAGEID 106-107.
[36] SAC, ¶100; Depo. of Jonas, Doc. 39, PAGEID 340, 396-97, 378.

8

*Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests jurisdiction factually, the court may consider evidence outside the pleadings to determine if jurisdiction exists. *Block v. Canepa*, No. 20CV-3686, 2021 WL 1909650, at *2 (S.D. Ohio May 12, 2021). However, if a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating a facial attack to the assertion of jurisdiction must consider the allegations of fact in the complaint to be true. *Gentek*, 491 F.3d at 330.

Here, Defendants do not articulate whether they are making a facial or factual attack on jurisdiction with respect to their Rule 12(b)(1) challenge. Defendants do not dispute most of the allegations of the Second Amended Complaint (and the depositions of Defendants confirm most of them), and merely argue in their Motion to Dismiss that the allegations are insufficient to confer standing upon Plaintiffs. Defendants submit only limited evidence for the Court's consideration – the Affidavit of Larry Hook and Hook's statements that the Resolution is not a policy and was not passed in accordance with the District's procedures for policies. Thus, Plaintiffs submit that Defendants' attack is a facial attack and the allegations of the Complaint are accepted as true, with the limited exception of the subject matter contained in Mr. Hook's affidavit which is a factual attack with respect to that issue alone. And, as set forth above, Mr. Hook's deposition testimony demonstrates his affidavit should not be relied upon nor determinative of any issues herein.

**B. <u>Plaintiffs Clearly Have Standing to Pursue Their Claims</u>**

To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157–58 (2014). One need not subject herself to actual prosecution or other enforcement action to suffer an Article III injury for purposes of standing. *Id.* at 158-59.

9

Pre-enforcement challenges to laws are permissible so long as the circumstances render the threatened enforcement sufficiently imminent. *Id.* "Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* (internal quotations omitted).

Here, Defendants argue Plaintiffs have suffered no injury in fact because none of the acts complained of happened to the Plaintiffs personally, and, because Plaintiffs have suffered no injury, their injury can't be redressed by a favorable ruling.[37] This is both factually and legal wrong. As described herein, Defendants are already enforcing the Resolution, and Plaintiffs have been injured as a result. Moreover, pre-enforcement challenges are permitted.

1. **Standing in First Amendment Cases**

   a. **Free Speech Claims; Pre-enforcement Challenges**

The caselaw applying the standing doctrine to First Amendment cases demonstrate a relaxed application of the standing analysis. Parties can show they have standing to raise a pre-enforcement First Amendment challenge by establishing: "(1) they intend to engage in expression that the Free Speech Clause arguably protects, (2) their expression is arguably proscribed by the challenged [rule or law] , and (3) they face a credible threat of enforcement from those [Rules or laws]." *Fischer v. Thomas,* 52 F.4th 303, 307–09 (6th Cir. 2022) (finding judicial candidates had pre-enforcement standing to challenge Rules on First Amendment grounds). As for the third factor, "[t]o identify a credible threat of enforcement, ***the first and most important factor is whether the challenged action chills speech***." *Fischer,* 52 F. 4th 303, 307 (emphasis added). Beyond a chill, a variety of other factors can demonstrate a credible threat of enforcement. The

---

[37] Mot. Dismiss, Doc. 53, at pp. 9-12.

most common ones for consideration include: (1) a history of enforcing the challenged provision against the plaintiff or others; (2) has the entity sent warning letter to the plaintiffs regarding their conduct; (3) does the challenged regulatory regime make enforcement easier or more likely; (4) whether the entity disavowed and intent to enforce the challenged provision. *See id.* at 307. This is not a laundry list and a party seeking to establish need not satisfy all factors. *Id.* at 307-308.

Just last month, the United States Supreme Court reiterated the sanctity of the First Amendment, and found the plaintiff had standing to make a pre-enforcement challenge to a law she alleged would violate her First Amendment speech rights, *even before the plaintiff had started her new business venture much less been subjected to the law she sought to challenge. See 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308 (2023). Therein, the plaintiff planned to offer website services in the future, but "worried" the Colorado law she challenged would force her to express views with which she disagreed. *Id.* at 2308. No threat of enforcement of the law had been made against the plaintiff. The plaintiff pointed to enforcement of the law against others. *Id.* at 2309. The Court found the plaintiff had standing to make a pre-enforcement challenge to the law, despite the fact the plaintiff had not yet even started the business nor had any enforcement of the law threatened against her. *Id.* at 2310-11. In so finding, the Court emphasized the importance of protecting and enforcing the Free Speech Clause of the First Amendment. *See id.* at 2310-11, 2312, 2321. The Supreme Court's recent decision must be read to reiterate the relaxed standing requirement applicable to challenges based upon the First Amendment.

### b. <u>Overbreadth and Vagueness Exceptions to Traditional Rules of Standing</u>

Moreover, the doctrines of overbreadth and vagueness "provide an exception to the traditional rules of standing and allow parties not yet affected by a statute to bring actions under the First Amendment based on a belief that a policy is so broad or unclear that it will have a chilling

effect." *Ison v. Madison Loc. Sch. Bd.*, 395 F. Supp. 3d 923, 931–32 (S.D. Ohio 2019), reversed in part by *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 894 (6th Cir. 2021) (finding policy was viewpoint discriminatory and not content-neutral as determined by district court). "Imprecise laws can be attacked on their face" under the overbreadth and/or vagueness doctrines. *Miller v. City of Cincinnati*, 709 F. Supp. 2d 605, 626–27 (S.D. Ohio 2008), *aff'd,* 622 F.3d 524 (6th Cir. 2010). While "allegations of subjective chill" alone are insufficient, *see id.*, the courts have specifically recognized that a relaxed standing and ripeness standard applies "to steer clear of the risk that the law 'may cause others not before the court to refrain from constitutionally protected speech or protection.' " *Kiser v. Reitz,* 765 F.3d 601, 607–09 (6th Cir. 2014). Moreover, where plaintiffs challenge a statute or ordinance for vagueness or overbreadth, "the Supreme Court has concluded that they have standing to assert the rights of **third parties** whose protected speech may have been impermissibly curtailed by the challenged prohibition, even though as applied to the plaintiffs themselves, the ordinances only curtailed unprotected expression." *Ison*, 395 F. Supp. 3d 923, 931–32 (emphasis added) ("Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court.").

In *Virginia v. American Booksellers Assn. Inc.,* 484 U.S. 383 (1988), the Supreme Court held that booksellers could seek pre-enforcement review of a law making it a crime to " 'knowingly display for commercial purpose' " material that is " 'harmful to juveniles' " as defined by the statute. The court found that the booksellers could make a pre-enforcement challenge to the law on their own behalf, and on behalf of book-buyers who would be denied access to the materials.

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger

12

of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.

*Id.* at 393.

### c.   <u>Standing for First Amendment Right to Receive Information Claims</u>

With respect to recipients of information such as the student Plaintiffs herein and their First Amendment right to receive information, to demonstrate injury there must be a speaker who is willing to convey the information. When such speaker exists, the recipient has standing to assert a First Amendment claim based upon the right to receive information. *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 756–57 (1976); *see also Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 583 (6th Cir. 1976) (finding public high school student plaintiffs had Frist Amendment right to receive information and standing to challenged school board's actions in removing books).

### d.   <u>Plaintiffs Have Standing to Assert Their First Amendment Claims, as Well as Their Overbreadth and Vagueness Claims</u>

As the foregoing caselaw makes clear, Plaintiffs have standing to assert their First Amendment-based claims, as well as their Fourteenth Amendment vagueness and overbreadth claims. As a result of the Resolution, Plaintiff Updike's speech has been chilled. She, and other teachers, have made changes to their planned curriculum and have self-censored to avoid certain speech and topics on which they would otherwise teach students to avoid discipline for violating the Resolution, including for example, with respect to religion, gender identity and race. Ms. Updike is a ready, willing and able speaker on the topics banned by the Resolution. Were it not for the Resolution, Plaintiff Ms. Updike would also freely teach and discuss these topics.[38] In

---

[38] SAC, ¶64; *see also* SAC, ¶¶67-68.

addition, the ability of Plaintiff Updike and other educators within FHSD to conduct individualized assessments of students has been curtailed as a result of the Resolution.[39]

The student Plaintiffs have likewise suffered an injury in fact because they have been and continue to be denied access to information and ideas that would be presented by Plaintiff Updike and other educators, but for the Resolution.[40]  They are also denied access to information and equal opportunities as a result of the discontinuation of the individualized assessments described above. The student Plaintiffs have also suffered an injury in fact as a result of, among other things:  being denied access to the topics of speech which formed part of Diversity Day, which topics are now banned by the Resolution, despite ready, willing and able speakers[41]; being denied the ability to participate in the student survey regarding the Resolution which was shut down and censored by Defendants[42]; being denied access to books which have not been added to school libraries due to fears they run afoul of the Resolution.[43]

Defendants' enforcement of the Resolution and the Controversial Issues Policy which it purports to implement against others demonstrates the imminence of the threat of enforcement against Plaintiffs.  Among other things, the following enforcement actions by Defendants against others demonstrates the imminence of the threat of enforcement against Plaintiffs:

- FHSD students were forced to leave a presentation in Washington D.C. due to the content of the material, which ran afoul of the prohibitions in the Resolution.[44]

- Defendant Board Members directed FHSD administration to conduct an investigation and sought to discipline a teacher for teaching and presenting material regarding redlining in an AP Human Geography class.[45]

---

[39] SAC, ¶71.
[40] SAC, ¶64; *see also* SAC, ¶¶67-68.
[41] SAC, ¶58.
[42] SAC, ¶84, 85.
[43] SAC, ¶81.
[44] SAC, ¶70.
[45] SAC, ¶¶93, 94.

- Defendants sought to discipline a teacher for utilizing pronouns and a link explaining the importance of utilizing the pronouns chosen by an individual because the conduct violated the Resolution, and required her to remove the material with which they did not agree.[46]

- Defendants have introduced at least two proposals to require students to utilize the bathrooms of their assigned sex at birth, rather than the gender with which they identify, in furtherance of the Resolution. Such conduct clearly shows the imminence of further actions affecting Plaintiffs, especially transgender student Plaintiff R.C..[47]

- Following the Board's cancellation of Diversity Day, certain Board member Defendants inquired of the superintendent about disciplinary action that could be taken against students to who sought to peacefully protest the Board's decision.[48]

- Defendants have taken steps to begin reviewing books to censor or ban those which violate the Resolution.[49]

Students and teachers within FHSD, including Plaintiffs, are aware of this and other actions to enforce the Resolution and have suffered injury and harm as a result and legitimately fear further enforcement and harm.[50] Defendants have not disavowed their intention to enforce the Resolution or discipline those who violate it, and instead have refused to rescind or revise it, and continue to make plans for further enforcement.[51] Plaintiffs' injuries are fairly traceable to the Resolution, and the grant of an injunction against its enforcement and a declaration of its unconstitutionality will redress Plaintiffs' injuries.

In addition to the foregoing, as Plaintiffs have also asserted vagueness and overbreadth challenges to the Resolution, the standing analysis is relaxed further. The language of the Resolution is so broad and unclear that its very existence has a chilling effect. *See Ison,* 395 F. Supp. 3d 923, 931–32. Even Defendant Jonas, the author of the Resolution, admitted in her

---

[46] SAC, ¶¶72, 73.
[47] SAC, ¶75, 76, 78.
[48] SAC, ¶44.
[49] SAC, ¶80.
[50] SAC, ¶76.
[51] SAC, ¶52; *see also* SAC, ¶98.

deposition the language of the Resolution was overbroad and vague with respect to some terms.[52] Defendant Hook likewise testified in his deposition that he didn't know the meaning of several of the terms.[53] Plaintiffs have standing to assert and protect the rights of third parties not before the Court when making a facial overbreadth and vagueness challenge, as here. *See id.*

Recent decisions on similar laws censoring speech are on point and further confirm Plaintiffs' standing. *See, e.g., Honeyfund.com, Inc. v. DeSantis,* No. 4:22CV227-MW/MAF, 2022 WL 3486962 (N.D. Fla. Aug. 18, 2022) (plaintiffs had standing to challenge provision of the state Individual Freedom Act ("IFA"), also known as the STOP WOKE Act, alleging it was a viewpoint-based restriction on speech that violated the First Amendment and was also both vague and overbroad). It noted, "[w]hen First Amendment rights are involved, courts apply the injury-in-fact requirement most loosely, 'lest free speech be chilled even before the law or regulation is enforced.'" *Id.* at *4. Therefore, an "actual injury can exist when a plaintiff avoids expression to avoid potential legal consequences of the expression." *Id.;* s*ee also Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, No. 4:22CV304-MW/MAF, 2022 WL 16985720, at *17–18 (N.D. Fla. Nov. 17, 2022) (finding that that several professor plaintiffs and a student plaintiff had standing to make a pre-enforcement challenge to the IFA/STOP WOKE ACT, and enjoined the law as viewpoint discriminatory and vague). Thus, there can be no doubt Plaintiffs have standing to assert their claims in this case.

### e.   <u>The Resolution is a Policy, Practice or Custom Under 42 U.S.C. §1983</u>

Defendants also appear to take the position that Plaintiffs do not have standing, and can have no injury in fact, because the Resolution is just an unenforceable "vision statement." Defendants rely upon the Affidavit of Defendant Hook for the assertion that the Resolution is not

---

[52] *See, e.g.,* Depo. Jonas, Doc. #39, at PAGEID 402, 403-405.
[53] *See, e.g.,* Depo. Hook, Doc. 40, at PAGEID 605-606, 635.

16

a "policy" as defined in FHSD's policy manual, and was not passed in accordance with written procedures for the passage of policies.  Again, Defendants' argument fails.

First, as this Court is aware, a policy, custom or practice for purposes of 42 U.S.C. §1983 encompasses significantly more than just written policies enclosed in a policy book.  A "policy" is simply "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *See, e.g., Fulton v. W. Brown Loc. Sch. Dist. Bd. of Educ.,* No. 1:15-CV-53, 2015 WL 3867243, at *5 (S.D. Ohio June 23, 2015) (citing *Monell,* 436 U.S. at 690). A "custom" has not been officially adopted by the public body, but nevertheless is a practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* (internal quotations omitted).  Even inaction amounting to deliberate indifference can be a policy, practice or custom for purposes of §1983.  *See id.; see also, e.g., Oliver v. Kalamazoo Bd. of Ed.*, 368 F. Supp. 143, 166 (W.D. Mich. 1973) (action of school board members is official state action for purposes of §1983; policy can include set of general goals adopted by a government entity). The Resolution is undoubtedly a policy for purposes of §1983 as it was official action taken by the Board, a state governmental entity.  It was likewise an action to implement already existing policies which are contained in FHSD's policy books, including the Controversial Issues policy.

Moreover, the deposition of Defendant Hook demonstrates he has no knowledge whether the Resolution is a policy, practice, or custom for purposes of §1983, he does not know if a resolution is subject to the same procedures as FHSD policies (and "resolution" is not even defined in FHSD's policies and procedures), and acknowledged that board resolutions can require action. He further acknowledged there are unwritten policies enforced within FHSD.[54]

---

[54] Depo. Hook, Doc. 40, PAGEID 38, 106-107, 596, 599-601, 608.

Finally, Defendants actions during Defendant Jonas' deposition are an admission the Resolution is legislative and an official policy of the Board for purposes of §1983, rather than a mere unenforceable vision statement. During the deposition of Ms. Jonas, counsel objected and Ms...Jonas refused to answer certain questions about the Resolution on the basis of "legislative privilege,"[55] which is applicable only with respect to legislative acts and not mere "vision statements" or "statements of belief." *See, e.g., Plain Local School District Bd. of Educ. V. DeWine*, 464 F. Sup.3d 915, 920-23 (S.D. Ohio 2020); *See Planned Parenthood Sw. Ohio Region v. Acton*, No. 1:15-CV-00568, 2020 WL 11036304, at *2 (S.D. Ohio Jan. 17, 2020). Whether school district legislators, *i.e.* the Defendant Board Members, may assert legislative privilege in this federal civil action is for determination on another day. What is relevant now is the fact Defendants have asserted the legislative privilege in this litigation and, in doing so, have admitted the Resolution is "legislation" and a "legislative act," which are the only things to which the privileges could potentially apply. Defendants cannot have it both ways. The Resolution cannot be both a legislative act and policy to which these privileges potentially apply, and a mere unenforceable, non-legislative and non-policy "vision statement" as such would be a mere political statement or political action to which the privilege could not apply.

**2. Plaintiffs Have Standing to Assert Their Equal Protection Claims**

Defendants do not address Plaintiffs' standing to assert their Equal Protection claims. With respect to Equal Protection Claims, the injury-in-fact necessary to establish standing is the denial of equal treatment resulting from the imposition of a barrier by the government. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 508 U.S. 656, 666 (1993); *see also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 718–19

---

[55] SAC, ¶100; Depo. of Jonas, Doc. 39, PAGEID 340, 396-97, 378.

(2007); *Sullivan v. Benningfield*, 920 F.3d 401, 408 (6th Cir. 2019)**;** *Perrea v. Cincinnati Pub. Sch.*, 709 F. Supp. 2d 628 (S.D. Ohio 2010) (Dlott, J.). Here, the Plaintiffs have asserted Equal Protection Claims because the Resolution is race-based on its face, and explicitly singles out for prohibition concepts related to race, gender identity, and sex. The Act will foreseeably disparately harm students of color and those who identify as LGBTQ+, including Plaintiffs. In addition, Plaintiffs and particularly the student Plaintiffs, are denied equal access to ideas, speech, and the benefits, resources, opportunities and facilities of the FHSD public education system as a result of the Resolution. Plaintiffs are members of suspects classes and are within the classes of persons specifically targeted by the Resolution.[56] Moreover, by prohibiting the consideration of a student's race, culture, religion and identity in the administration of academic programs, the Resolution imposes a barrier that denies equal access to the FHSD education system for students, including student Plaintiffs who are members of the minority classes targeted by the Resolution. Thus Plaintiffs have standing to assert these claims.

### 3. Plaintiffs Have Standing to Assert Their Parental Liberty Interest Claim

Defendants argue Plaintiffs do not have standing to assert their parental liberty claim because their right to make decisions regarding the care, custody and control of their children is not without limits, and Defendants have the right to determine school curriculum as shaped (and censored) by the Resolution.[57] However, in *Meyer v. Nebraska,* 262 U.S. 390 (1923), the Court held that a statute prohibiting the teaching of subjects in any school in any language other than English was an arbitrary interference with parents' liberty interest and right to control the education of their child. The same is true here. The Resolution passed by Defendants prohibits the teaching of views with which Defendants do not agree, and constitutes an arbitrary interference with the

---

[56] *See* SAC, ¶¶138-41.
[57] *See* Mot. Dismiss, Doc. #53, at p. 13

Plaintiff parents' rights to control the education of their children.  The case cited by Defendants in their Motion to Dismiss, *Blau v. Ft. Thomas Public Sch. Dist.,* 401 F.3d 381 (6th Cir. 2004), involved application of a dress code, not the viewpoint-based and discriminatory censorship which is at issue here with respect to the Resolution.  The arbitrary censorship of speech at issue here is akin to the arbitrary censorship the Court struck down in *Meyer.*

    **4.**  **Plaintiffs Have Standing to Assert Their Title VI Claim**

Defendants do not challenge Plaintiff's standing with respect to their Title VI claim, nor could they.  The intended beneficiaries of a federally-funded program have standing to assert Title VI claims.  *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996); *Franklin v. Mansfield City Sch. Dist.*, No. 1:14 CV 1163, 2015 WL 7429046, at *10 (N.D. Ohio Oct. 30, 2015).  Here, at a minimum, the student Plaintiffs have standing to assert this claim, as well as their parents who are asserting claims on behalf of their minor children.  *See id.*

    **C.**  **The Individual Defendants Should Not Be Dismissed**

Plaintiffs incorporate their Memorandum in Opposition to the Motion to Dismiss of Defendant Rasmussen (Doc. #54) in response to Defendants' argument that the official capacity claims against the individuals should be dismissed.  Moreover, as it relates to Defendant Hook, he admits he is the person responsible for implementing policies of the Board in his job as Superintendent.[58]  Thus, he is correctly and necessarily named as a party to this lawsuit which seeks injunctive relief to prohibit the implementation and enforcement of the Resolution.

**IV.**  **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully submit Defendants' Motion to Dismiss the Second Amended Complaint must be denied.

---

[58] Hook Depo., Doc. 40, at PAGEID 588.

Dated:   July 28, 2023                    Respectfully submitted,

                                *s/W. Kelly Lundrigan*
                                *s/ Nicole M. Lundrigan*
                                W. Kelly Lundrigan (0059211)
                                Nicole M. Lundrigan (0075146)
                                LUNDRIGAN LAW GROUP CO, LPA
                                1080 Nimitzview Drive, Suite 402
                                Cincinnati, Ohio 45230
                                Phone (513) 813-7610
                                klundrigan@lundrigan-law.com
                                nlundrigan@lundrigan-law.com
                                *Attorneys for Plaintiffs*

## Certificate of Service

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Court's CM/ECF electronic filing services and served upon all parties of record on the 28th day of July, 2023.

                                *s/ Nicole M. Lundrigan*