UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SARAH UPDIKE and JAMES UPDIKE Individually and as parents and next Friends of their minor children I.U, A.U. and K.U. , et al. | : | Case No.: 1:22-cv-00374 |
| | : | JUDGE MICHAEL BARRETT |
| | : | MAGISTRATE STEPHANIE BOWMAN |
| Plaintiffs | | |
| vs. | : | |
| BOARD OF EDUCATION OF FOREST HILLS SCHOOL DISTRICT, et al. | : | **DEFENDANTS' SARA JONAS, LINDA HAUSFELD, BOB BIBB, KATIE STEWART LARRY HOOK AND FOREST HILLS SCHOOL DISTRICT BOARD OF EDUCATION REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| Defendants. | : | |
| | : | |

## I. FACTUAL BACKGROUND

As Plaintiffs concede in their memorandum in opposition to the motion to dismiss second amended complaint ("memo in opp"), under Rule 12(b)(1), the court may consider evidence outside of the pleadings to determine if jurisdiction exists. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Furthermore, the court is empowered to resolve factual disputes on a Rule 12(b)(1) motion. *Id*. Forest Hills used the affidavit of Defendant Larry Hook in support of its motion to dismiss the second amended complaint and the Plaintiffs have added to the factual record by filing the depositions of Defendant Sara Jonas, Defendant Leslie Rasmussen and Defendant Larry Hook. Accordingly, those materials will be used to support Forest Hills' reply memorandum in support of the motion to dismiss the second amended complaint.

### A. Deposition and Affidavit Testimony of Larry Hook

In his affidavit, Mr. Hook testified that under the bylaws in its policy manual, the School Board has defined a policy as a "general, written statement by the governing board which defines its expectation or position on a particular matter and authorizes appropriate action that must or may be taken to establish and/or maintain those expectations." Mr. Hook also testified in his affidavit that it is the duties of the superintendent to bring to the School Board's attention if any school policies need to be revised. Further, Mr. Hook testified that he had not identified any School Board policy that needed to be adopted, amended, or repealed in order to effectuate any portion of the Resolution. No new bylaws or policies have been proposed for adoption, amendment or repeal based on the Resolution. No changes to the administrative guidelines under which the School District operates or the curriculum of the School District and the preparation of courses of study are needed as a result of the Resolution.

In his deposition, Mr. Hook testified that a Resolution can be a couple of things; it can be a statement of belief or it can require action. (Doc No. 40, PAGEID # 37). Mr. Hook testified multiple times that the Resolution is not policy. (Doc No. 40 PAGEID # 38-39, 41). Mr. Hook consistently testified that the Resolution was a statement of belief. (Doc No. 40 PAGEID # 44, 50).

Plaintiffs argue that Mr. Hook admitted that he does not know what constitutes a "policy, practice or custom" under 42 U.S.C. §1983. There is no factual reason for Mr. Hook to know that as he is a School Superintendent, not a civil rights lawyer. Furthermore, what constitutes a policy, practice or custom is a question of law to be determined by the court, not by the School Superintendent or attorneys. Mr. Hook's testimony on this point is irrelevant.

With respect to Plaintiffs' claim that Mr. Hook acknowledged that unwritten policies exist within Forest Hills, a look at Mr. Hook's actual testimony is enlightening.

Q. Is there a specific policy at Forest Hills that said surveys from students have to be pre-approved?

A. I can't pull one right off the top of my head, no. But I can't sit here and tell there isn't one either.

Q. You're saying that you can't say that there is not one in writing?

A. Correct.

Q. But you said earlier that it's school policy that surveys be approved, right?

A. Did I? I'm sure I - - did I say school policy?

Q. I thought that's what you said. Is it school policy that students have to get pre-approval of surveys?

A. Well, it's common that students have to have approval to do - - to use our software, our, you know, to do surveys, yes, that's pretty typical, that there is an approval process, typically through teacher, through the building level first.

Q. But there is nothing in writing that you know of that requires that, right?

A. Not right off the top of my head that I am aware of.

Q. So, there are unwritten policies that exist in the District that cover things like speech, right?

Mr. Wharton: Objection. Answer if you can.

A. Well, I think there's - - yeah, I don't think you can possibly have a policy that covers everything that we do so we have to - - administrators are expected to make some commonsense judgments on things, so.

(Doc No. 40 PAGEID # 664 – 666)[1]

It should also be noted that that contrary to Plaintiffs' counsel's questioning of Mr. Hook, Mr. Hook never testified that it was school policy for students to get pre-approval of surveys. The section of Mr. Hook's deposition where he was asked about student surveys does not reveal any testimony from Mr. Hook that it is a Board policy to require pre-approval of surveys. (Doc No. 40 PAGEID # 658 – 662). In summary, Mr. Hook's testimony in his affidavit and his deposition is consistent: the Resolution is not policy and is not changing school policies.

---

[1] On page 8 of Plaintiffs' Memorandum in Opposition, they have miscited this testimony of Mr. Hook with a PAGEID number that does not exist. This cite is to the exact PAGEID location of this testimony.

### B.     <u>Deposition of Defendant Leslie Rasmussen</u>

Dr. Rasmussen testified that the Resolution is not an official policy of the School District. (Doc No. 41 PAGEID # 810). She knows this because she has worked on the policy committee since she became a School Board Member and the Resolution did not go through the necessary process according to the Board's bylaws to create an approved policy. (Doc No. 41 PAGEID # 810-811). Dr. Rasmussen further testified that from her position on the policy committee, the Resolution cannot possibly be a policy unless it follows the process of creation and approval under the bylaws. (Doc No.41 PAGEID # 811).

Dr. Rasmussen also testified that since the Resolution was passed at the June 22, 2022 meeting, the Board has not taken any official action that was expressly or explicitly based on the Resolution. (Doc No. 41 PAGEID # 905). She did not vote for the Resolution and believes it should be rescinded.

### C.     <u>Deposition of Sara Jonas</u>

Ms. Jonas testified that she authored the Resolution and proposed it to the School Board President to be considered at the June 22, 2022 School Board Meeting. (Doc No. 39 PAGEID # 297-298, 300, 316). Ms. Jonas also testified, and her testimony is undisputed and not contradicted by any other testimony, that the Resolution was never intended to create policy changes, rather, it was a statement of belief where the Board stood on the issues in the Resolution. (Doc No. 39, PAGEID #313-314). Ms. Jonas also said that she believed the only way to enforce the Resolution is to create policy and there was never any intent to change or create policy based on the Resolution. (Doc No. 39, PAGEID # 314-315). Again, this testimony that the Resolution is only a statement of belief and not a change to existing school policies is uncontradicted by the record.

**II.     ARGUMENT OF LAW**

    **A.     Plaintiffs Do Not Have Standing**

Despite the numerous new allegations in the Second Amended Complaint, Plaintiffs continue to lack standing to bring any claims against Forest Hills based on the Resolution. The Resolution is undisputedly a statement of belief and not a School policy or a policy, practice or custom under §1983. Moreover, allegations that do not involve the named Plaintiffs cannot serve as a basis for claims by those named Plaintiffs. Also, the Plaintiffs alleged injuries are not injuries in fact and are conjectural or hypothetical.

        **1.     Rule 12(b)(1)**

As noted above, under a 12(b)(1) motion to dismiss, the court is empowered to resolve factual disputes and the parties are free to supplement the record as was done in this case.

        **2.     Claims not involving the named Plaintiffs and claims that predated the Resolution must be dismissed**

The first issue that the Plaintiffs have failed to overcome in standing is whether they have suffered an injury in fact. With respect to the numerous allegations that do not involve any of the named Plaintiffs, the Plaintiffs are prohibited from bringing the claims since the alleged misconduct did not occur to the Plaintiffs. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (*holding petitioners must show that they personally have been injured, not that the injury has been suffered by others).*

Many of the allegations in the Second Amended Complaint are not alleged to have occurred to any of the named Plaintiffs, including the Washington, D.C. trip incident, the teacher's use of pronouns in her email with a hyperlink to a non-School District website, the high school student's survey that was removed for failure to receive permission to post it, the failure to establish the Diversity Club at Turpin High School, and the allegations concerning the redlining video and teacher's comments.

Forest Hills also submits that allegations that occurred prior to the passage of the Resolution cannot have been caused by the Resolution and thus are invalid claims that cannot confer standing upon the Plaintiffs. These claims include the "cancelation" of Diversity Day at Turpin High School in May of 2022, the disbanding of the C.A.R.E. Committee, the campaign statements made during the School Board Electoral Campaign in the November of 2021, the "cancelation" of Go Offline Day at Nagel Middle School in the Spring of 2022, and the redlining video incident that occurred in March of 2022. Short of time travel, there is no way that the Resolution could have caused the events that preceded its existence. Accordingly, those claims do not provide any basis to find that the Plaintiffs have standing to bring them.

It should also be noted that several of the new allegations in the Second Amended Complaint concern acts that were not official actions of the Board and for which the Board bears no liability. Specifically, the claims about banning of books in libraries or proposals concerning the usage of bathrooms by transgender students are not alleged to have actually been implemented by Forest Hills. There is no allegation that any official Board action on these acts took place. Since the Board can only officially act through votes, the fact that no official action took place means that the Board cannot be liable for such claims.

### 3. There is no injury in fact

With respect to the standing requirement of injury in fact, such an injury must be "concrete, particularized, and actual or imminent [.]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). As the evidence before the Court is undisputed that the Resolution is a statement of belief and is not official School Board policy, its force and effect is nil with respect to any impact on the Plaintiffs. Defendant Leslie Rasmussen, who voted against the Resolution, clearly testified that the Resolution is not a School Board policy. Furthermore, none of the allegations in Plaintiffs' Second Amended Complaint allege any specific

connection between the Resolution and the alleged harms complained of. In fact, most of these harms are speculative fears about what might happen in the future.

The Northern District of Ohio found that a plaintiff's complaint seeking a determination regarding the speculative harm, contingent upon the defendant at some point in the future in seeking to enforce the policy is insufficient to establish standing. *N. Am. Co. for Life & Health Ins. v. Crowell*, 2021 U.S. Dist. LEXIS 138196 at * 4-5 (N.D. Ohio 2021). This case mirrors the Plaintiffs' claims that they have fear that the Forest Hills may do something in the future they believe is harmful based on the Resolution. Such a complaint is insufficient to establish standing this case.

Complaints by the Plaintiffs that harm occurred to others who are not plaintiffs are also insufficient to establish standing. The Supreme Court has held that a plaintiff raising only a generally available grievance about government and claiming only harm to his and other citizen's interest in the proper application to the Constitution, lacks standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 573-74 (1992). Plaintiffs must also allege specific present objective harm or a threat of specific future harm, and not merely allegations of a subjective "chill". *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). What the Plaintiffs are alleging in the Second Amended Complaint are speculative fears that their personal actions will be chilled because of the Resolution but they have not alleged nor can they allege that the Resolution has caused any specific present objective harm or the threat of specific future harm because the Resolution is a statement of belief and is not official policy. The Resolution did not change or alter any School Board policy and it contains no enforcement mechanism within its language.

Because Plaintiffs' claims are speculative and conjectural, they have suffered no injury in fact and thus have no standing to bring claims against Forest Hills. Without a concrete and particularized injury to the Plaintiffs, they cannot bring the claims found in the Second Amended Complaint. Accordingly, it should be dismissed.

### 4. Plaintiffs cannot trace any injury to the Resolution

The uncontroverted evidence in the record before the court is that the Resolution is a statement of belief and does not constitute any official policy of the School District. The Resolution is not being enforced and contains no enforcement action within it. Accordingly, there is no injury that the Plaintiffs can trace to the Resolution. Conclusory allegations that the Resolution caused the Plaintiffs' complaints are insufficient.

As Plaintiffs acknowledge in their memorandum in opposition, they point to fears of future harm, which are not concrete injuries. The Sixth Circuit has held that fear of future harm not certainly impending is not injury in fact. *Buchholz v. Tanick,* 946 F.3d 855, 865 (6th Cir. 2020). Such a speculative fear cannot serve as the basis for finding an injury in fact. *Id*. Accordingly, the Plaintiffs have no standing for such claims.

Plaintiffs also argue that the Resolution constitutes a policy, practice or custom under 42 U.S.C. §1983. First, as demonstrated by the undisputed evidence in the record, the Resolution is not a policy. The Plaintiffs properly cite to the legal definition of "policy" under 42 U.S.C. §1983 as a policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers. The Resolution is not that as the testimony makes clear it is not a policy. It has no enforcement mechanism so it cannot be equivalent to an ordinance or regulation.

Courts have defined a "custom" for purposes of liability as one that is so permanent and well settled as to constitute a customer usage with the force of law. *Monell v. Dept. of Social Servs.* 436 U.S. 658, 691 (1978). The Resolution did not come into existence until June 22, 2022 and Plaintiffs' complaint was filed on June 29, 2022, a week after the passage of the Resolution. It is nigh impossible for the Resolution to become a custom that is so permanent and well settled within the span of seven days. Furthermore, the parties have stipulated that the Resolution will not be enforced in any way during the pendency of this litigation. Plaintiffs have not moved this Court for any action as a result of any alleged

violations of this stipulation. Therefore, there can be no custom or usage if the Resolution is not being enforced. The testimony already presented to the Court is that the Resolution was never intended to be enforced but was simply a statement of belief of the Board at that time.

### 5.   Plaintiffs' complaints are not redressable

Plaintiffs do not make any substantive argument that the redressability factor is met other than the simply conclusory statement that the declaration of the unconstitutionality of the Resolution will redress their injuries. As noted earlier, Plaintiffs claims of anxiety or fear about what might happen as a result of the Resolution are insufficient to justify a finding of an inuring fact and such fears and anxiety cannot be redressed as it appears the Plaintiffs' concerns are more with the Members of the School Board who voted for the Resolution rather than the force and effect of the Resolution (which is nil).

### B.   Plaintiffs' Legal Authorities Are Distinguishable

Plaintiffs' claim standing for their First Amendment cases under pre-enforcement challenges, overbroad and vagueness exceptions, and right to receive information claims. However, all of the cases Plaintiffs have cited in support of those claims are easily distinguishable from the facts in this matter. Here, as has been undisputed by the evidence in the record, the Resolution did not create any official School policy. It has no enforcement mechanism and has been characterized by both its author and its chief detractor on the School Board as a statement of belief.

Plaintiffs' first claim that they have standing for pre-enforcement challenge to the Resolution relies on *Fischer v. Thomas*, 52 F.4th 303 (6th Cir. 2022). This case involved a challenge to the Kentucky Code of Judicial Conduct. These rules are enforceable contrary to the Resolution at issue. The Plaintiffs also cite *303 Creative, LLC. v. Elenis*, 143 S. Ct. 2298 (2023). Again, this case involved a challenge to a Colorado State law. The Resolution is not a state law and is not enforceable as a law is.

9

With respect to the Plaintiffs' claims for overbroad and vagueness, the cases cited there, again, involve School policies concerning the authorization of staff to carry firearms, *Ison v. Madison, LLC. Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021); a challenge to a city ordinance, *Miller v. City of Cincinnati*, 709 F.2d 605 (F.D. Ohio 2008), a*ff'd* 622 F.3d at 524 (6th Cir. 2010); anti-advertising regulations propagated by the Ohio State Dental Board governing the actions of dentists, *Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014); and a challenge to a Virginia statute criminalizing the display of obscene materials if visible to juveniles, *Virginia v. American Book Sellers Ass'n* 484 U.S. 383 (1988).  The Resolution is not equal to the challenged provisions in those cases in force and effect.  The Resolution has no enforcement mechanism and the testimony is undisputed that it does not create any new or alter any existing policies, unlike the challenged provisions in the cases cited by Plaintiffs.

Plaintiffs' claims for equal protection, parental liberty interest, and Title VI also must fail due to lack of standing.  As the Resolution has no force and effect and does not change or create any new policies in the School District, it cannot cause any denial of equal treatment or interfere with parents' rights to control the education of their children.  Furthermore, Plaintiffs' Title VI claim must fail as the Student Plaintiffs have not suffered any injury because no changes have ben made to School policies.

### C.     The Individual Defendants Should Be Dismissed

Plaintiffs have incorporated their memorandum in opposition to Defendant Leslie Rasumussen's motion to dismiss on the issue of whether the official capacity claims against the individuals should be dismissed.  (Doc #54).  As pointed out in the motion to dismiss the second amended complaint, the official capacity claims against the individuals are claims against the political entity itself and thus official capacity claims against individual Defendants are redundant claims.  Plaintiffs' argument that a motion to dismiss based solely upon redundancy is insufficient and ignores the fact that Rule 12(b)(1) and 12(b)(6) motion made by Forest Hills goes both to the merits of the claims as well as redundancy.

Finally, Plaintiffs argument that discovery will need to be sent to individual Board Members and they do not wish to have only the Board as an entity respond ignores the fact that Board Members have no separate power that does not already reside in the Board of Education. Moreover, the Board of Education can only act on a vote of the majority of its Members and individual Board Members cannot bind the Board of Education.

### III.   CONCLUSION OF LAW

For the foregoing reasons, Forest Hills submits that the Second Amended Complaint should be dismissed with prejudice and costs to the Plaintiffs.

Respectfully Submitted,

/s/  Bernard W. Wharton
R. Gary Winters, Esq. (0018680)
Bernard W. Wharton Esq. (0063487)
Ian R. Smith, Esq. (0068195)
McCaslin, Imbus & McCaslin
600 Vine Street, Suite 800
Cincinnati, OH 45202
(513) 421-4646 phone
(513) 421-7929 fax
rgwinters@mimlaw.com
bwwharton@mimlaw.com
irsmith@mimlaw.com
*Attorney for Defendants Sarah Jonas, Linda Hausfeld, Bob Bibb, Katie Stewart Leslie Rasmussen, Larry Hook, Board of Education of the Forest Hills School District and The Forest Hills School District*

### CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of August, 2023, a copy of the foregoing document was filed electronically and served through the court's electronic filing system via email to all parties of record.

/s/ Bernard W. Wharton
Bernard W. Wharton