# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| SARAH UPDIKE, et al., | Case No. 1:22-CV-374 |
| Plaintiffs, | Judge Michael R. Barrett |
| v. | |
| SARA JONAS, et al., | **OPINION & ORDER** |
| Defendants. | |

This matter is before the Court on the motions to dismiss filed by Defendant Leslie Rasmussen, (Doc. 52), and Defendants Sara Jonas, Linda Hausfeld, Katie Stewart, Bob Bibb, Larry Hook, the Board of Education of the Forest Hills School District ("Board"), and the Forest Hills School District ("FHSD"), (Doc. 53). Plaintiffs—FHSD parents and educators acting on their own behalf and on behalf of their children and students—have responded in opposition, (Docs. 54, 55), and Defendants have replied, (Docs. 57, 59).

For the following reasons, the Court will deny the motions to dismiss.

I. **FACTUAL BACKGROUND**

On June 22, 2022, a majority of Board members voted to pass what was entitled a "Resolution to Create a Culture of Kindness and Equal Opportunity for All Students and Staff" ("Resolution"). (*See* Doc. 51, PageID 1581-83). At its core, the Resolution proclaimed that "FHSD will not use Critical Race Theory, intersectionality, identity, or anti-racism curriculum, for student education or any staff training." (*Id.*, PageID 1582). Specifically, the Resolution declared that:

- Schools may not use race, socioeconomic class, religion, gender identity, sex, ethnicity, or culture as a consideration when hiring or administering academic programs or evaluation systems.
- Neither schools, nor instructors or guest speakers, shall have student[s] participate in class or complete assignments that require, guide, or nudge the student to consider his or her race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture as a deficiency or a label to stereotype the student as having certain biases, prejudices or other unsavory moral characteristics or beliefs based on these immutable characteristics.
- Schools shall not discipline differently on the basis of race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture.
- Schools shall not engage in stereotyping based upon race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture, including ascribing character traits, values, moral and ethical codes, privileges, status or belief.
- Schools shall not force individuals to admit privilege or oppression, or to "reflect," "deconstruct," or "confront" their identities based on race, socioeconomic class, religion, gender identity, sex, sexual preference, ethnicity, or culture.

(*Id.*).

Plaintiffs brought suit shortly thereafter, asserting that "[t]he Resolution is a content-based restriction . . . without any legitimate pedagogical purpose," and is intended to push "partisan political agendas, using language that is simultaneously extraordinarily broad and vague."[1] (*Id.*, PageID 1531). They claim that the Resolution has already been implemented in some circumstances and go on to argue that "[t]he Resolution's vague, overbroad, race-based and viewpoint discriminatory provisions impermissibly invade

---

[1] Plaintiffs note that "Jonas, Hausfeld, Bibb, and Stewart campaigned for office together as a group on the platform of being 'AGAINST Critical Race Theory,' and '"AGAINST Comprehensive Sexuality Education.'" (Doc. 51, PageID 1543). Indeed, Jonas agreed that "[p]art of [her] campaign platform was to tell people that [she] would try to eliminate CRT as part of the curriculum in the Forest Hills School District." (Doc. 39, PageID 296-97).

upon, among other things, students' First Amendment Right to receive information and free speech, educators' First Amendment Right of free speech and academic freedom, and the Equal Protection Clause." (*Id.*, PageID 1532). Accordingly, Plaintiffs bring seven causes of action and ask the Court to enjoin Defendants from enforcing or otherwise continuing to implement the Resolution, officially or unofficially.

Defendants have moved to dismiss, with Rasmussen arguing that the suit against her in her official capacity as a Board member "is redundant [because] the only potentially plausible claim is against the defendant school board," (Doc. 52, PageID 1585), and the remaining Defendants arguing both that Plaintiffs lack standing and that the only proper Defendant in this matter is the Board, (Doc. 53). The remaining Defendants also repeatedly return to their position that "[t]he Resolution is not the same as a policy based on the Board's bylaws." (*Id.*, PageID 1588).

Plaintiffs counter that redundancy alone is not an adequate basis for the dismissal of official-capacity claims, (Doc. 54, PageID 1602-03), and challenge the premise that the Resolution is "a mere unenforceable 'vision statement,'" (Doc. 55, PageID 1612). Instead, they argue, the Resolution is a "policy, practice, or custom" for the purposes of 42 U.S.C. § 1983, as well as "an action to implement already existing policies which are contained in FHSD's policy books, including the Controversial Issues policy." (*Id.*, PageID 1621). Moreover, Plaintiffs contend that the Resolution "imposes a barrier that denies equal access to the FHSD education system," and "constitutes an arbitrary interference with the Plaintiff parents' rights to control the education of their children." (*Id.*, PageID 1623-24).

## II. LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction; the plaintiff carries the burden of demonstrating that either the Constitution or a statute has granted the court jurisdiction over a given suit, and that it may therefore hear it." *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 157 (6th Cir. 2018); *cf. United States v. Cotton*, 535 U.S. 625, 630 (2002) (noting that subject-matter jurisdiction "can never be forfeited or waived"). "Article III standing is a question of subject matter jurisdiction properly decided under [Federal Rule of Civil Procedure] 12(b)(1)," *Am. BioCare Inc. v. Howard & Howard Attys. PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017), and "[a] Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007).

In order to establish standing, a plaintiff must generally show "(1) a concrete and particularized injury-in-fact which (2) is traceable to the defendant's conduct and (3) can be redressed by a favorable judicial decision." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 343 (6th Cir. 2023). An injury-in-fact arises when a plaintiff suffers "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). However, "an injury need not necessarily be tangible . . . to be concrete," *Dickson*, 69 F.4th at 343, and an injury may arise in the pre-enforcement context "not merely out of actual or even expected enforcement actions, but also 'costly, self-executing compliance burdens' or because the challenged [provision] 'chills protected First Amendment activity,'" *Bongo Prods., LLC v.*

*Lawrence*, 548 F.Supp.3d 666, 677 (M.D. Tenn. 2021) (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)).

As for the merits of the allegations themselves, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a Rule 12(b)(6) dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021).

In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Courts may also look to "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

III.  ANALYSIS

    A. Standing

Because a motion to dismiss based on a lack of subject-matter jurisdiction must typically be considered before a motion to dismiss for failure to state a claim upon which relief can be granted, *see Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 592 (S.D. Ohio 2002), the Court will look to that component of the motion filed by Defendants Jonas, Hausfeld, Stewart, Bibb, Hook, the Board, and FHSD. At the heart of their standing argument is the assertion that Plaintiffs have suffered no injury-in-fact and "a fair reading of Plaintiffs' Amended Complaint demonstrates that they have admitted that no such injury exists or is imminent." (Doc. 53, PageID 1595). But the Court's reading differs.[2]

First, consider the contested question of whether the Resolution constitutes a policy, as opposed to a mere, unenforceable "vision statement" or "statement of belief." It defies logic and the basic conventions of the English language to argue that the Resolution was "only a statement of belief and not a change to existing school policies," (Doc. 59, PageID 1678), when the Resolution itself uses mandatory language to declare what FHSD "*will not utilize*," and lists a number of actions that schools and teachers "*may not*" or "*shall not*" take. Even more so when taken in the context of FHSD's own policy manual, (Doc. 40, PageID 710)—which explicitly defines "shall" as a word that "is used when an action by the Board or its designee is required"—and the so-called "Controversial Issues" policy, (Doc. 39, PageID 532)—which could serve as an enforcement mechanism

---

[2] Jonas, Hausfeld, Stewart, Bibb, Hook, the Board, and FHSD do not explicitly state whether they are mounting a facial or factual attack on standing, but later take issue with some of Plaintiffs' factual assertions. To the extent that Plaintiffs put forth undisputed factual allegations, the Court will accept them as true and construe them in a light most favorable to Plaintiffs. *See Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). But where the Court must inquire into the factual predicates for jurisdiction, the Court may look to evidence outside of the pleadings. *See Lovely v. United States*, 570 F.3d 778, 781-82 (6th Cir. 2009).

6

and provides that "[d]ecisions about course content shall be based upon the goals, policies, and administrative regulations of the school district."[3]

In any event, the more relevant definition of "policy" here is that under § 1983, encompassing "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by Defendants. *Johnson v. Hardin County*, 908 F.2d 1280, 1285 (6th Cir. 1990) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). Critically, "there need not be a formal policy for there to be an unconstitutional custom that amounts to policy," *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994), and both written and unwritten policies or customs may result in liability, *see Jackson v. City of Cleveland*, 925 F.3d 793, 830 (6th Cir. 2019). In this case, then, it would appear that a Resolution by any other name is a policy.

As to injury, Plaintiffs advance claims that Defendants are already enforcing the Resolution. (Doc. 55, PageID 1607-09). Regardless, Plaintiffs argue, they are entitled to bring pre-enforcement First Amendment challenges because they have expressed "an intention to engage in a course of conduct arguably affected with a constitutional interest," but that course of conduct is arguably proscribed by the Resolution and there exists a credible threat of enforcement.[4] *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *see also Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022) ("To identify a credible threat of enforcement, the first and most important factor is whether the

---

[3] At one point, a Board member even appeared to refer to the Resolution as a policy: among select correspondence in the record is an email exchange from August 2022 in which a FHSD parent takes issue with his daughter's kindergarten teacher including her personal pronouns at the bottom of her email signature. Defendant Stewart responds to the parent, saying "I wanted you to know this goes against board policy. I am hopeful this will be corrected and won't be a concern going forward." (Doc. 39, PageID 555).

[4] Plaintiffs also point to what they say is the overbreadth of the Resolution—specifically in its as-yet-undefined prohibition on "euphemistic surrogates" related to CRT and anti-racism—resulting in "standing to assert the rights of third parties whose protected speech may have been impermissibly curtailed by the challenged prohibition." *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 835 (6th Cir. 2004).

challenged action chills speech."); *cf. Speech First, Inc. v. Schlissel*, 939 F.3d 756, 764 (6th Cir. 2019) ("Even if an official lacks actual power to punish, the threat of punishment from a public official who *appears* to have punitive authority can be enough to produce an objective chill."). The Court agrees on both fronts and finds that Plaintiffs have satisfied the injury-in-fact component of this standing analysis through plausible allegations that the Resolution has already infringed upon their First Amendment rights, as well as reasonable claims of an objective chill resulting from the Resolution. *See generally Menders v. Loudon County Sch. Bd.*, 65 F.4th 157, 164 (4th Cir. 2023) ("Establishing standing in First Amendment claims alleging the chilling of free speech . . . is not that demanding."). Furthermore, those injuries are both fairly traceable to Defendants' actions and can be remedied by the favorable judicial decision Plaintiffs now seek.

The last standing argument, by Defendants Jonas, Hausfeld, Stewart, Bibb, Hook, the Board, and FHSD, challenges the standing of parent and teacher Plaintiffs to claim that the Resolution runs afoul of their liberty interests in the education of their children and students. Specifically, Defendants assert a lack of standing because "the Courts have not extended the fundamental right for a parent to make decisions regarding the care, custody and control of their children to a decision as to how a public school teaches their child." (Doc. 53, PageID 1599). But their two-paragraph argument provides little more than a general overview of applicable caselaw and goes more toward the merits of the claim. And while Defendants are correct that the liberty interest involved in this claim is highly limited in scope, *see, e.g., Doe v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 3:22-CV-337, 2023 U.S. Dist. LEXIS 137555, at *39-43 (S.D. Ohio Aug. 7, 2023), parent and teacher Plaintiffs still possess standing to challenge what they allege to be an arbitrary

8

and unreasonable exercise of power, *see Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923).

### B. Official-Capacity Claims

Finally, the parties disagree over the nature of Plaintiffs' official-capacity claims against the named individual Defendants. Defendants, looking to the familiar maxim that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity," *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), ask the Court to dismiss any such claims on the basis of redundancy. Plaintiffs respond that they "may decide what claims to allege and how to allege them," and argue that Sixth Circuit precedent "does not require dismissal of official capacity claims on the basis of redundancy." (Doc. 54, PageID 1603). In support of their position, Plaintiffs invoke a recent decision in this District in which the Court held that "the simple fact that some of the plaintiff's claims are *redundant* does not mean that their dismissal is required under Rule 12(b)(6)." *Doe v. Springboro Cmty. Sch. Dist. Bd. Of Educ.*, No. 1:19-CV-785, 2021 U.S. Dist. LEXIS 73227, at *8 (S.D. Ohio Apr. 15, 2021).

Although Defendants are correct that an official-capacity suit is "to be treated as a suit against the entity," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), the Court also finds no affirmative mandate in the relevant (but admittedly mixed) caselaw or the Federal Rules of Civil Procedure requiring dismissal on redundancy grounds at this preliminary juncture, *see Baar v. Jefferson County Bd. Of Educ.*, 476 F. App'x 621, 635 (6th Cir. 2012). To that end, and in recognition of the fact that such dismissals appear to typically occur in the summary judgment phase of proceedings, *see Troutman v. Louisville Metro Dep't of Corr.*, No. 3:16-CV-742, 2018 U.S. Dist. LEXIS 205847, at *9 (W.D. Ky. Dec. 4,

2018), the Court declines at this time to dismiss the official-capacity claims against named individual Defendants, but does so without prejudice and subject to renewal.

### IV. CONCLUSION

For the foregoing reasons, the motions to dismiss, (Docs. 52, 53), are **DENIED**.

**IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                              Michael R. Barrett
                                              United States District Judge